United States Bankruptcy Court
Southern District of Texas

**ENTERED**
March 21, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| CHESTNUT RIDGE ASSOCIATES LLC, | ) | Case No. 23-90069 (DRJ) |
| | ) | |
| | ) | |
| Debtor. | ) | |

**THIRD INTERIM ORDER GRANTING DEBTOR'S MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

On this day the Court considered the *Debtor's Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 7] (the "Motion")[1] filed by Chestnut Ridge Associates LLC (the "Debtor"). Having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm; and based on the evidence presented and the arguments of counsel at a hearing held on February 8, 2023, on the Motion, the Court hereby finds:

On February 5, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in this Court. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Code.

---

[1] Any capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Motion.

This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

The Debtor asserts that it will suffer irreparable and immediate harm if it is not granted the relief herein. The Debtor further asserts that an immediate and critical need exists for the Debtor to use funds in order to continue the operation of its business and that, without such funds, the Debtor will not be able to pay the direct operating expenses needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor asserts that, at this time, the Debtor's ability to use Cash Collateral (as defined hereafter) is vital to the confidence of the Debtor's tenants, vendors and suppliers of goods and services, and to the preservation and maintenance of the going concern value of the Debtor's estate.

The Court held a hearing on the Motion on February 8, 2023. On February 8, 2023, the Court granted the Motion on an interim basis pursuant to the *Interim Order Granting Debtor's Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 20] (the "Interim Order"). Pursuant to the Interim Order, the Debtor was authorized to use Cash Collateral through February 24, 2023, in accordance with the terms of the Interim Order. Then, on March 1, 2023, the Court entered the *Second Interim Order Granting Debtor's Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 38] (the "Second Interim Order" and, collectively, the "Interim Orders").

Good cause has been shown for the entry of this Third Interim Order. The Court

finds that the notice of the Motion and the Hearing on the Motion was sufficient under the circumstances.  Entry of this Third Interim Order is justified and appropriate under the circumstances.  Entry of this Third Interim Order is in the best interest of the Debtor's estate.

IT IS THEREFORE ORDERED AND ADJUDGED as follows:

1. **Use of Cash Collateral**.  Subject to the terms of this Third Interim Order, the Debtor is hereby authorized to use Cash Collateral during the period (the "<u>Budget Period</u>") beginning March 13, 2023, and ending April 14, 2023, or as provided in any subsequent interim or final order on the Motion.  The Debtor is authorized to use Cash Collateral only in the amounts and for the expenses and disbursements set forth in the Budget attached hereto as **Exhibit A**, subject to the Budget Variance (defined below). The Debtor shall not incur expenses or use Cash Collateral in an amount that exceeds by more than ten percent (10%) the total expenses provided in the Budget for the Budget Period (the "<u>Budget Variance</u>").  Nothing herein shall be deemed consent or approval by the Lender of future amounts that may be charged to the Debtor by its management company.

2. **Adequate Protection and Replacement Liens**.  As adequate protection to Kingsgate Partner LLC (the "<u>Lender</u>") for any diminution in value of the Lender's collateral resulting from the Debtor's use of cash or cash equivalents including rents and other cash proceeds (the "<u>Cash Collateral</u>") the Lender is granted replacement liens ("<u>Replacement Liens</u>") in the Debtor's unencumbered assets in the amount of such diminution in value, including but not limited any unencumbered cash or cash equivalents that do not constitute Cash Collateral, with such Replacement Liens having the same

level of priority as the Lender's liens and security interests in the Debtor's real and personal property as existed as of the Petition Date (the "Replacement Collateral"). If, notwithstanding the grant of Replacement Liens, the Debtor's use of Cash Collateral results in a diminution in value of the Lender's collateral, including but not limited to its interest in the Cash Collateral and real property collateral, such that any portion of the Lender's claim is unsecured, such unsecured claim shall constitute a super-priority claim under 11 U.S.C. § 507(b) that is superior in priority to all other claims in this case.

3. **Liens of Harris County**. Notwithstanding any provision of this Third Interim Order or any orders pertaining to post-petition financing, use of cash collateral, the sale of the debtors' assets, or any agreements validated by any such orders, the liens currently held by Harris County, or which shall arise during the course of this case pursuant to applicable non-bankruptcy law, shall neither be primed by nor subordinated to any liens granted thereby or pursuant to this Third Interim Order.

4. **No Lien Upon Avoidance Actions**. For purposes of this Third Interim Order, notwithstanding anything herein to the contrary, the Replacement Liens do not extend to avoidance rights and claims under Sections 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code.

5. **Carve-Out**. Notwithstanding anything herein to the contrary, the Replacement Liens are subject and subordinate to a carve-out of funds (the "Carve Out") for all fees required to be paid to: (i) the Clerk of the Bankruptcy Court, and (ii) the Office of the United States Trustee pursuant to Section 1930(a) of Title 28, United States Code. The Court reserved to a final hearing any determination of the appropriate amount for the

carve out of reasonable fees and expenses incurred by a trustee, if any, under section 726(b) of the Bankruptcy Code.

6. **Perfection of Liens**. The Replacement Liens are, and shall be, valid, perfected, enforceable and effective as of the Petition Date without the need for any further action by the Debtor or the Lender, or the necessity of execution or filing of any instruments or agreements.

7. **Survival**. The terms and provisions of this Third Interim Order inure to the benefit of, and are binding upon, the Debtor, the Lender, and creditors of the Debtor, and their respective successors and assigns, including, without limitation, any trustee or legal representative of the Debtor appointed in this case or in any superseding case under Chapter 7 of the Bankruptcy Code. This Third Interim Order is immediately valid and fully effective upon entry by this Court.

8. **No Waiver.** Nothing in this Third Interim Order shall prejudice or waive the right of the Debtor or any other party to contest the amount, validity, or avoidability of the Lender's claims and security interests. Further, nothing in this Third Interim Order shall prejudice or waive the right of the Lender, including claims and causes of action against the Debtor, and rights to object or contest the further use of Cash Collateral at the final hearing on the Motion.

9. **Notice of Subsequent Hearing on Use of Cash Collateral**. A subsequent interim or final hearing on the Motion will be held on subsequent notice. The Debtor shall serve a notice of the subsequent hearing on (a) the Office of the U.S. Trustee; (b) the Lender, or upon counsel if known; (c) the twenty largest unsecured creditors for the Debtor, and (d) all parties requesting notice in this case.

10. The Debtor has established that the relief granted herein is necessary to avoid immediate and irreparable harm as required by Bankruptcy Rules 4001(b)(2) and 6003. A hearing to consider the final approval of the Motion the ("Final Hearing") will be noticed separately. Counsel for the Debtor shall file a notice of the Final Hearing and serve it on all parties reflected on the service list. The deadline to object to the Motion and entry of a permanent cash collateral order shall be three (3) business days before the Final Hearing.

11. This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Third Interim Order.

**Signed: March 21, 2023.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

# Exhibit A
# [Budget]

**Chestnut Ridge Associates, LLC**
**3rd Interim Budget**
**2023**

| Category Description | Week Ending | 3<br>3/17/23 | 4<br>3/24/23 | 5<br>3/31/23 | 6<br>4/7/23 | 7<br>4/14/23 | TOTAL |
|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | |
| Total Rents & Recovery Received | | 0.00 | 15,431.37 | 0.00 | 75,000.00 | 110,171.09 | 200,602.46 |
| **OPERATING COSTS** | | | | | | | |
| **Real Estate Insurance** | | | | | | | 0.00 |
| **Management Fees** | | 0.00 | 0.00 | 0.00 | 14,147.50 | 0.00 | 14,147.50 |
| **CPA Costs (Tax Return)** | | | | | | | 0.00 |
| **Texas Franchise 2023 Tax** | | | | | | | 0.00 |
| Electricity - common area | | | | | | 1,494.63 | |
| Water/Sewer/Drainage Fee | | | | | | 2,700.54 | |
| **UTILITIES** | | 0.00 | 0.00 | 0.00 | 0.00 | 4,195.17 | 4,195.17 |
| **Repair and Maintenance** | | 3,500.00 | 3,500.00 | 3,500.00 | 3,000.00 | 2,000.00 | 15,500.00 |
| Sweeping | | | | 1,600.00 | | | |
| Landscaping | | | | 1,400.00 | | | |
| Waste Pickup | | | | 244.83 | | | |
| **TOTAL CONTRACT SERVICES** | | 0.00 | 0.00 | 3,244.83 | 0.00 | 0.00 | 3,244.83 |
| **TOTAL OPERATING COSTS** | | 3,500.00 | 3,500.00 | 6,744.83 | 17,147.50 | 6,195.17 | 37,087.50 |
| **Weekly Cash Flow** | | (3,500.00) | 11,931.37 | (6,744.83) | 57,852.50 | 103,975.92 | 167,014.96 |
| **Rolling Cash Balance** | | | | | | | |
|    Beginning Cash | | 361,175.97 | 357,675.97 | 369,607.34 | 362,862.51 | 420,715.01 | |
|    Weekly Cash Flow | | (3,500.00) | 11,931.37 | (6,744.83) | 57,852.50 | 103,975.92 | |
| Week Ending Cash Balance | | 357,675.97 | 369,607.34 | 362,862.51 | 420,715.01 | 524,690.93 | |