**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | CHAPTER 11 |
|  | ) |  |
| CHESTNUT RIDGE ASSOCIATES LLC, | ) | CASE NO. 23-90069 (DRJ) |
|  | ) |  |
| DEBTOR. | ) |  |
|  | ) |  |

**DISCLOSURE STATEMENT FOR**
**CHAPTER 11 PLAN OF REORGANIZATION FOR**
**CHESTNUT RIDGE ASSOCIATES LLC**

Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@fosheyprostok.com
echou@fosheyprostok.com
dross@fosheyprostok.com

**ATTORNEYS FOR THE DEBTOR AND**
**DEBTOR-IN-POSSESSION**

DATED: May 8, 2023

**TABLE OF CONTENTS**

I. NOTICE TO HOLDERS OF CLAIMS ............................................................................................................1

    A.   Generally......................................................................................................................................1
    B.   Summary of Treatment under the Plan ......................................................................................3

II. EXPLANATION OF CHAPTER 11 ............................................................................................................8

    A.   Overview of Chapter 11 ..............................................................................................................8
    B.   Plan of Reorganization...............................................................................................................9

III. THE DEBTOR AND ITS BUSINESS ........................................................................................................11

    A.   Overview ...................................................................................................................................11
    B.   The Property .............................................................................................................................11
    C.   Events Prior to Commencement of the Chapter 11 Case.......................................................12
        1.   COVID..............................................................................................................................11
        2.   Discussions With Lender.................................................................................................12
    D.   Commencement of the Chapter 11 Case ................................................................................12
    E.   First-Day Pleadings ...................................................................................................................12
    F.   Estate Professionals .................................................................................................................13
    G.   No Creditors' Committee ..........................................................................................................13
    H.   Schedules and Bar Date ...........................................................................................................13

IV. OVERVIEW OF THE PLAN ....................................................................................................................13

V. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN.........................................................................15

VI. CONFIRMATION OF THE PLAN ............................................................................................................16

    A.   Solicitation of Votes; Voting Procedures................................................................................16
        1.   Ballots and Voting Deadlines ........................................................................................16
        2.   Parties-in-Interest Entitled to Vote ...............................................................................16
        3.   Vote Required for Class Acceptance...............................................................................17
    B.   Confirmation Hearing...............................................................................................................17
    C.   Requirements for Confirmation of the Plan...........................................................................18
    D.   Cramdown ................................................................................................................................21

VII. RISK FACTORS ...................................................................................................................................22

    A.   Insufficient Acceptances ..........................................................................................................23
    B.   Confirmation Risks....................................................................................................................23
    C.   Inability to Sell the Property Upon Favorable Terms ..............................................................23
    D.   Estimated Distributions under the Plan ..................................................................................23

VIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ...........................................24

    A.   Continuation of the Chapter 11 Case ......................................................................................24
    B.   Alternative Plan of Reorganization ..........................................................................................24
    C.   Chapter 7 Liquidation...............................................................................................................24

IX. CONCLUSION .....................................................................................................................................25

    *[Remainder of page intentionally left blank]*.........................................................................25

Chestnut Ridge Associates LLC (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 case, hereby submits this Disclosure Statement (this "Disclosure Statement") for the Chapter 11 Plan of Reorganization of Chestnut Ridge Associates LLC (the "Plan"). This Disclosure Statement is to be used in connection with the solicitation of votes on the Plan, a copy of which is attached hereto as **Exhibit A**. Unless otherwise defined herein, capitalized terms used herein have the meanings ascribed thereto in the Plan (see Article I of the Plan). Parties-in-interest are urged to carefully review the Plan in conjunction with this Disclosure Statement.

For a general summary of the proposed treatment of Claims and Interests under the Plan, please see "Summary of Treatment under the Plan" beginning on page 3 below.

## I. NOTICE TO HOLDERS OF CLAIMS

### A. Generally

The purpose of this Disclosure Statement is to enable Creditors whose Claims are Impaired to make an informed decision in exercising their right to vote to accept or reject the Plan.

THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

On _____, the Bankruptcy Court entered an *Order* ___ [Docket No. ___] (the "Solicitation Order"). Pursuant to section 105(d) of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure, the Solicitation Order (a) conditionally approved this Disclosure Statement, (b) set a combined hearing for final approval of this Disclosure Statement and confirmation of the Plan, (c) approved voting procedures, materials for solicitation of votes on the Plan, and form of notice, and (d) granted related relief, including establishment of certain deadlines relating to final approval of this Disclosure Statement and confirmation of the Plan. A copy of the Solicitation Order is included in the materials accompanying this Disclosure Statement. CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A FINAL DETERMINATION BY THE BANKRUPTCY COURT THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AS REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE OR A DETERMINATION REGARDING THE FAIRNESS OR MERITS OF THE PLAN.

The statements contained in the Disclosure Statement are made as of the date hereof unless another time is specified, and neither delivery of the Disclosure Statement nor any exchange of rights made in connection with the Plan shall, under any circumstances, create an implication that there has not been any change in the information set forth herein since the date the Disclosure Statement and the materials relied on in preparation of the Disclosure Statement were compiled.

For the convenience of Creditors and parties-in-interest, this Disclosure Statement summarizes the terms of the Plan, but the Plan itself qualifies all summaries. This Disclosure

Statement is qualified in its entirety by the terms of the Plan. If any inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan are controlling. In the event of conflict between the Plan and Confirmation Order, the Confirmation Order will control.

Each Claimant should consult the Claimant's individual attorney, accountant and/or financial advisor as to the effect of the Plan on such Claimant.

Each holder of a Claim or Interest entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. Except for the Debtor's Estate and its professionals, no person has been authorized to use or promulgate any information concerning the Debtor, the Debtor's business, or the Plan, other than the information contained herein, in connection with the solicitation of votes to accept or reject the Plan. No holder of a Claim entitled to vote on the Plan should rely upon any information relating to the Debtor, the Debtor's business, or the Plan other than that contained in this Disclosure Statement and the exhibits thereto. Unless otherwise indicated, the source of all information set forth herein was the Debtor.

The Disclosure Statement may not be relied on for any purpose other than to determine whether to vote in favor of or against the Plan and related options and elections, and nothing contained herein shall constitute an offer to sell or purchase a security as defined by state or federal securities law or an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or any other party, or be deemed conclusive evidence of the tax or other legal effects of the liquidation of the Debtor on holders of Claims or Interests. Certain of the information contained in the Disclosure Statement, by its nature, is forward looking, contains estimates and assumptions which may prove to be wrong, and contains forecasts which may prove to be wrong, or which may be materially different from actual results.

After carefully reviewing this Disclosure Statement, including the attached exhibits, please indicate your acceptance or rejection of the Plan by voting on the enclosed Ballot and returning the Ballot to the address set forth on the Ballot, in the enclosed return envelope so that it will be received by no later than **5:00 p.m., Central Time, on** _____. If you do not vote to accept the Plan, or if you are the holder of an unimpaired Claim or Interest, you may be bound by the Plan if it is accepted by the requisite holders of Claims or Interests.

TO BE SURE YOUR BALLOT IS COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN **5:00 p.m., Central Time, on** _____. For detailed voting instructions and the name, address, and phone number of the person you may contact if you have questions regarding the voting procedures, this process is explained below.

Pursuant to section 105(d) of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, the Bankruptcy Court has scheduled the Confirmation Hearing to consider final approval of the Disclosure Statement and confirmation of the Plan on _____**, at** _____**.m., Central Time**, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. The Bankruptcy Court has directed that objections, if any, to final approval of the Disclosure Statement and confirmation of the Plan be filed and served on or before _____**.m. Central Time on** _____. Any response to any objection to final approval of the

Disclosure Statement or confirmation of the Plan must be filed by **_____.m. Central Time on _____**.

THE DEBTOR SUPPORTS CONFIRMATION OF THE PLAN AND URGES ALL HOLDERS OF IMPAIRED CLAIMS TO VOTE TO ACCEPT THE PLAN.

**B.      Summary of Treatment under the Plan**

The following is an estimate of the numbers and amounts of classified Claims and Interests to receive treatment under the Plan, and a summary of the proposed treatment of such Claims and Interests under the Plan. Reference should be made to the entire Disclosure Statement and to the Plan for a complete description of the classification and treatment of Claims and Interests.

The information in the table below is drawn from the Debtor's Schedules and filed proofs of Claim. **Nothing in this table constitutes an admission of liability.** Many Claims are still under review by the Debtor and may be subject to offsets, counterclaims, and other defenses. The final universe of Claims, as actually Allowed, may differ from these tables.

| Class | Treatment |
|---|---|
| **Class 1 – Priority Non-Tax Claims**<br><br>Estimated Amount: $0<br><br>Estimated Number of Holders: 0 | **Unimpaired**<br><br>Paid in Cash in full on or shortly after the Effective Date.<br><br>**Estimated Recovery:  100%** |

| Class | Treatment |
|---|---|
| <u>Class 2</u> – **Secured Tax Claims**<br><br>Estimated Amount: $550,000<br><br>Estimated Number of Holders: Harris County and City of Houston | **Impaired**<br><br>A holder of an Allowed Secured Tax Claim shall be paid on account of its Allowed Secured Tax Claim the amount of such Allowed Claim, plus interest as provided herein, at the Reorganized Debtor's option: (1) in substantially equal quarterly Cash payments, with first payment due on April 1, 2024, and continuing quarterly with payment due on the first day of each quarter, with the last quarterly payment due January 1, 2028, *provided however*, if a Closing were to occur prior to the January 1, 2028, the unpaid balance of the Allowed Secured Tax Claim together with accrued and unpaid interest thereon, shall be paid on the Post-Closing Date Distribution Date; or (2) pursuant to such other treatment as may be agreed to by the Debtor (or Reorganized Debtor, as appropriate) and the holder of the Allowed Secured Tax Claim.<br><br>Interest on Allowed Secured Tax Claims shall accrue as follows: beginning on the date any portion of the tax underlying the Allowed Secured Tax Claim becomes delinquent under state law, and to the extent of such delinquency, interest shall accrue on the delinquent unpaid tax at the state statutory rate of 12% per annum in compliance with sections 511 and 1129 of the Bankruptcy Code.<br><br>The Liens securing each Allowed Secured Tax Claim shall remain in full force and effect until such Allowed Property Tax Claim is fully treated in accordance with the Plan.<br><br>**Estimated Recovery:  100%** |

| Class | Treatment |
|---|---|
| **Class 3 – Kingsgate Secured Claim**<br><br>Estimated Amount: $16,478,910.03 as of the Petition Date.<br><br>Estimated Number of Holders: 1 | **Impaired**<br><br>The holder of the Allowed Kingsgate Secured Claim shall receive, on or before the Post-Effective Date Distribution Date, the Kingsgate Secured Note, the form of which shall be submitted as a Plan Document. The Kingsgate Secured Note shall be in the original principal amount equal to the amount of the Allowed Kingsgate Secured Claim. The unpaid principal balance of the Kingsgate Secured Note shall bear interest at the rate of 5.838% per annum (based upon a 2 Year Treasury as of May 3, 2023, of 3.838% plus 200bps spread (2%) of risk premium). The Kingsgate Secured Note shall provide for monthly payments of accrued interest only for the term of the note. The unpaid principal balance of the Kingsgate Secured Note, together with any accrued and unpaid interest thereon, shall be fully due and payable upon the first to occur of (i) the tenth (10th) day after the Closing Date, or (ii) December 31, 2024.<br><br>The Liens securing the Allowed Kingsgate Secured Claim shall remain in full force and effect in the same priority as existed on the Petition Date until the Allowed Kingsgate Secured Claim is fully treated in accordance with the Plan.<br><br>**Estimated Recovery:  100%** |

| Class | Treatment |
|---|---|
| **Class 4 – Other Secured Claims**<br><br>Estimated Amount: $21,000.00<br><br>Estimated Number of Holders: 1 | **Impaired**<br><br>At the option of the Reorganized Debtor, each holder of an Allowed Other Secured Claim shall receive, on or before the Post-Closing Date Distribution Date, (i) the collateral securing such Allowed Other Secured Claim; (ii) Cash in the full amount of the Allowed Other Secured Claim plus any accrued and unpaid interest thereon accruing at the rate of 5.838% per annum commencing from the Effective Date of the Plan to the date Distribution is made; or (iii) such other treatment as may be agreed to in writing by the holder of such Allowed Other Secured Claim and the Reorganized Debtor.<br><br>The Liens securing each Allowed Other Secured Claim shall remain in full force and effect until such Allowed Other Secured Claim is fully treated in accordance with the Plan<br><br>**Estimated Recovery:  100%** |
| **Class 5 – Estate of DeSalvo Unsecured Claim**<br><br>Estimated Amount: $500,000.00<br><br>Estimated Number of Holders: 1 | **Impaired**<br><br>The holder of the Estate of DeSalvo Unsecured Claim shall receive, to the extent of the Allowed amount of such Claim, Cash equal to the Allowed amount of such Claim on or before the Post-Closing Date Distribution Date. |

| Class | Treatment |
|---|---|
| <u>**Class 6**</u> **– General Unsecured Claims**<br><br>Estimated Amount: $500,000.00<br><br>Estimated Number of Holders: 15 | **Impaired**<br><br>This class includes all General Unsecured Claims other than the Estate of DeSalvo Unsecured Claim or the Painted Tree Claim.  Each holder of an Allowed General Unsecured Claim shall receive, on account of such Allowed Claim, Cash equal to the Allowed amount of such Claim on or before the Post-Closing Date Distribution Date.<br><br>**Estimated Recovery:  100%** |
| <u>**Class 7**</u> **– Painted Tree Claim**<br><br>Estimated Amount: $1,000,000.00<br><br>Estimated Number of Holders: 1 | **Impaired**<br><br>The Painted Tree Claim in the amount as set forth in Exhibit 2 of the Plan as the Proposed Cure Claim for Painted Tree Kingwood, LLC (the "Painted Tree Cure Amount") shall be satisfied by: (i) monthly rent credited toward the Painted Tree Cure Amount until the amount is satisfied in full, and (ii) in the event a Closing takes place prior to the satisfaction in full of the Painted Tree Cure Amount as set forth in (i) above, all remaining balance of the Painted Tree Cure Amount shall be paid on or before the Post-Closing Date Distribution Date.<br><br>**Estimated Recovery: 100%** |

| Class | Treatment |
|---|---|
| **Class 8** – **Interests**<br><br>Estimated Number of Holders:  17 | **Impaired**<br><br>Each holder of an Allowed Interest in the Debtor shall retain each of their Allowed Interest from and after the Effective Date. In the event of a sale of the Property, each holder of an Allowed Interest in the Debtor shall receive a Pro Rata Share of any Net Proceeds remaining after completion of the full treatment, in accordance with the Plan, of all Allowed Administrative Expenses, Allowed Priority Claims (Class 1), Allowed Property Tax Claims (Class 2), the Allowed Kingsgate Secured Claim (Class 3), Allowed Other Secured Claims (Class 4), Allowed Estate of DeSalvo Unsecured Claim (Class 5), Allowed General Unsecured Claims (Class 6), and the Painted Tree Claim (Class 7).<br><br>**Estimated Recovery: unknown** |

The total universe of Claims, as ultimately Allowed, may be greater or smaller than as reflected in the above analysis.

## II. EXPLANATION OF CHAPTER 11

### A.    Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11, a debtor-in-possession attempts to reorganize its business for the benefit of the debtor, its creditors, and other parties-in-interest. The Debtor commenced the Chapter 11 Case by filing a voluntary chapter 11 petition on February 5, 2023.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee.

The filing of a chapter 11 petition also triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, *inter alia,* for an automatic stay of all attempts to collect pre-petition claims from a debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

B.      **Plan of Reorganization**

Although referred to as a plan of reorganization, a plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In the Debtor's Chapter 11 Case, the Plan proposes that the Debtor will have a reasonable time to market the Property and conclude a sale thereof on the most advantageous terms possible. The Debtor believes that the net proceeds of such a sale will be sufficient to provide full payment Allowed Administrative Expenses of the Chapter 11 Case and all Allowed pre-petition Claims against the Debtor, whether secured or unsecured. Any net proceeds from such a sale that remain after full payment of such Claims will be distributed to equity holders in the Debtor on a pro rata basis.

After a plan has been filed, the holders of impaired claims against or interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the plan proponent to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. This Disclosure Statement is presented to holders of Claims against and Interests in the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code.

If all classes of claims and interests accept a plan of reorganization, the bankruptcy court may nonetheless still not confirm the plan unless the court independently determines that the requirements of section 1129 of the Bankruptcy Code have been satisfied. Section 1129 sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests of creditors" test and be "feasible." The "best interests of creditors" test generally requires that the value of the consideration to be distributed to the holders of claims and interests under a plan may not be less than those parties would receive if the debtor was liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, unless the plan calls for liquidation or further financial reorganization, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under the plan without the need for such liquidation or further financial reorganization.

The Debtor believes that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, that the Plan is "feasible" and in the "best interests of creditors."  Attached to this Disclosure Statement as **Exhibit B** is a Financial Forecast of the Reorganized Debtor upon the emergence from the Chapter 11 Case to December 31, 2024, prepared by the Debtor's financial professionals.  The Financial Forecast shows the Debtor's ability to continue operations and meet its financial obligations until a sale or refinancing transaction is closed by December 31, 2024.  Attached to this Disclosure Statement as **Exhibit C** is a liquidation analysis prepared by the Debtor's financial professionals. The liquidation analysis shows that a chapter 7 liquidation could result in a significantly lower distribution to creditors than if the Plan is confirmed and consummated. **The Debtor supports confirmation of the Plan and urges all holders of Claims and Interests in Impaired Classes to accept the Plan.**

Chapter 11 does not require that each holder of a claim against or interest in a debtor vote in favor of a plan of reorganization in order for the bankruptcy court to confirm the plan. At

a minimum, however, the plan must be accepted by a majority in number and two-thirds in amount of those claims actually voting in at least one class of impaired claims under the plan. The Bankruptcy Code also defines acceptance of the plan by a class of interests (equity securities) as acceptance by holders of two-thirds of the number of shares actually voting. In the Chapter 11 Case, only the holders of Claims who actually vote will be counted as either accepting or rejecting the Plan.

In addition, classes of claims or interests that are not "impaired" under a plan are conclusively presumed to have accepted the plan and thus are not entitled to vote. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified in any way under the plan. However, if holders of the claims or interests in a class do not receive or retain any property on account of such claims or interests, then each such holder is deemed to have voted to reject the plan and does not actually cast a vote to accept or reject the plan.

Under the Plan, Class 1 (Priority Non-Tax Claims) is *unimpaired*. Therefore, Class 1 is conclusively presumed to have accepted the Plan, and holders of Claims in Class 1 will not cast ballots to accept or reject the Plan. Class 2 (Secured Tax Claims), Class 3 (the Kingsgate Secured Claim), Class 4 (Other Secured Claims), Class 5 (General Unsecured Claims), and Class 6 (Interests) are *impaired* under the Plan. Holders of Claims in Classes 2 through 5 and holders of Interests in Class 6 may cast ballots to accept or reject the Plan.

The bankruptcy court may also confirm a plan even though fewer than all the classes of impaired claims and interests accept it. For a plan to be confirmed despite its rejection by a class of impaired claims or interests, the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a class of rejecting claims if, among other things, the plan provides:  (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and interests, that the holder of any claim or interest that is junior to the claims or interests of such class will not receive or retain on account of such junior claim or interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims, and (b) no senior class of claims is to receive more than 100% of the amount of the claims in such class.

The Debtor believes that the Plan has been structured so that it will satisfy these requirements as to any rejecting Class of Claims, and can therefore be confirmed, if necessary, over the objection of any Classes of Claims. The Debtor, however, reserves the right to request confirmation of the Plan under the "cramdown" provisions of section 1129 of the Bankruptcy Code.

## III. THE DEBTOR AND ITS BUSINESS

### A.    Overview

The Debtor's principal asset is a shopping center known as The Shoppes at Kingsgate, located at 1113-1387 Kingwood Drive, Humble, Texas (the "Property"). The Debtor believes the Property's current value is no less than $26 million. For a more detailed description of the Property, see "The Property" starting on page 11 below.

Pursuant to a deed of trust, the Debtor had granted a mortgage on the Property to secure payment of a promissory note. The holder of the note has alleged that the outstanding balance on the note, as of January 18, 2023, was $16,377,744.07, which figure includes default interest and other fees to which the holder asserts it is entitled.

As such, the Debtor believes that it has substantial equity in the Property of at least $9 million. The Debtor commenced this Chapter 11 Case in order to preserve this equity for the benefit of the Debtor's unsecured creditors and interest holders.

### B.    The Property

The Property is a Class A grocery store-anchored shopping center situated on a site of approximately 14.87 acres. The improvements on the Property were constructed in 1980 and renovated in 2017. The Property features thirty-two (32) units with a total of 156,343 square feet of leasable space.

At present, the Property is 95.2% leased. Current tenants include well-known national and local retailers and service providers such as ALDI, Dollar Tree, Painted Tree, Jason's Deli, Wells Fargo Bank, and Mr. Gatti's Pizza.

The Property is favorably located along Kingwood Drive at the entrance to the Kingwood Master Planned Community. The Kingwood community is known as the "Livable Forest," with over 500 acres of private parks and 75 miles of greenbelt. Commercial development is sharply limited in the Kingwood community, and there is no additional land for retail projects such as the Property. As of 2021, the ratio of residents to square feet of retail space in Kingwood was 2,105 to one. The Debtor believes that this makes the Property an essential and highly valuable commercial location for the underserved Kingwood retail market.

### C.    Events Prior to Commencement of the Chapter 11 Case

#### 1.    COVID

As was the case with many commercial property owners throughout the country, the COVID-19 pandemic and government mandates and shutdowns in response to the pandemic were devastating for the Debtor. Most of the Debtor's tenants did not pay rent during the pandemic. In addition, bankruptcies of several tenants, including Stein Mart and Palais Royal, negatively impacted the Debtor.

### 2.      Discussions With Lender

As referenced above, the Debtor executed a secured promissory note (the "Note") to LegacyTexas Bank (the "Original Lender").[1] The Note, dated December 22, 2016, was in the original principal amount of $18,548,000 and was scheduled to mature on November 22, 2022. In the fall of 2022, the Debtor was engaged in talks with the Original Lender for an agreed extension of the Note. The Debtor believed that the discussions were proceeding favorably and that a consensual extension would be forthcoming. However, on or about December 23, 2022, the Original Lender sold and assigned the Note to Kingsgate Partner, LLC ("Kingsgate").[2]

By a letter dated December 28, 2022, Kingsgate sent the Debtor a default notice asserting that the Debtor was in default under the terms of the Note because it had not paid the full amount outstanding on the Note when the Note matured the previous month. On January 11, 2023, Kingsgate and the Debtor entered into a Pre-Negotiation Agreement in regard to the Note. On or about January 12, 2023, a Notice of Substitute Trustee's Sale Under Deed of Trust (the "Foreclosure Notice") was executed, constituting public notice that a non-judicial foreclosure sale of the Property would be conducted on February 7, 2023. By letter dated January 13, 2023, Kingsgate's counsel sent a copy of the Foreclosure Notice to the Debtor.

### D.      Commencement of the Chapter 11 Case

Foreclosure of the Property would have resulted in loss of the substantial equity in the Property. To preserve that equity for the benefit of the Debtor's unsecured creditors and interest holders, on February 5, 2023, the Debtor filed a voluntary petition for protection under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

### E.      First-Day Pleadings

On the Petition Date, the Debtor filed two so-called "first-day" pleadings to ensure that it can smoothly transition into bankruptcy and continue to operate its business in chapter 11 in compliance with all the requirements thereof. These first-day pleadings included:

- *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* (the "Cash Collateral Motion"); and

- *Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing the Debtor to (A) Operate its Cash Management System, (B) Honor Certain*

---

[1] Subsequently, the Original Lender was succeeded by Prosperity Bank following a merger of the two banks.

[2] The Debtor was formally advised of the assignment of the Note by a letter dated December 31, 2022, from Prosperity Bank to the Debtor and its managers.

*Prepetition Obligations Related Thereto, and (C) Maintain Existing Business Forms, and (II) Granting Related Relief* (the "Cash Management Motion");

On February 8, 2023, the Bankruptcy Court entered orders granting, on an interim basis, the Cash Collateral Motion and the Cash Management Motion.  On March 1, 2023, the Court entered the *Second Interim Order Granting Debtor's Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 38]. Then, on March 21, 2023, the Court entered the *Third Interim Order Granting Debtor's Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. 64].  On April 24, 2023, the Court entered the *Final Order Authorizing the Debtor's Use of Cash Collateral; and Granting Adequate protection and Related Relief* [Docket No. 79].

**F.      Estate Professionals**

The following is a list of each of the Estate Professionals that have been employed, with a description of the role of each such Estate Professional:

| | |
|---|---|
| CBRE, Inc. | Appraiser of the Property |
| Forshey & Prostok, LLP | Attorneys for the Debtor in the Chapter 11 Case |
| Grant Thornton | Financial Advisors to provide advice relating to the Plan |

**G.      Creditors' Committee**

On March 21, 2023, the United States Trustee appointed a three (3) member Official Committee of Unsecured Creditors (the "UCC").  The members of the UCC are:  Estate of Joseph DeSalvo; Neutex Advanced Energy Group; and SRS Real Estate Partners – Houston, LLC.

**H.      Schedules and Bar Date**

The Debtor's bankruptcy schedules were filed on March 7, 2023 [Docket No. 47].  The Debtor's statement of financial affairs was also filed on March 7, 2023 [Docket No. 48].

The Bar Date for filing a proof of Claim for all Creditors except a governmental unit is June 12, 2023. The Bar Date for filing a proof of Claim for a governmental unit is August 7, 2023.

## IV. OVERVIEW OF THE PLAN

**THE FOLLOWING IS A SUMMARY OF THE MATTERS CONTEMPLATED TO OCCUR EITHER PURSUANT TO OR IN CONNECTION WITH THE CONSUMMATION OF THE PLAN. THIS SUMMARY HIGHLIGHTS THE SUBSTANTIVE PROVISIONS OF THE PLAN AND IS NOT, NOR IS IT INTENDED TO BE, A COMPLETE DESCRIPTION OR A SUBSTITUTE FOR A FULL AND COMPLETE REVIEW OF THE PLAN. THE FOLLOWING**

**SUMMARY IS COMPLETELY QUALIFIED BY THE TERMS OF THE PLAN. IN THE EVENT OF ANY CONFLICT BETWEEN THE FOLLOWING SUMMARY AND THE PLAN, THE PLAN WILL CONTROL.**

The Plan gives the Debtor a reasonable period of time, of approximately 18 months, to either (1) market and sell the Property for the highest obtainable price, or (2) obtain refinancing, that would provide full payment of Allowed Secured Claims and Allowed General Unsecured Claims, plus some return to Interest holders. The Plan organizes certain kinds of Claims and Interests into Classes, and leaves other kinds of Claims unclassified, as the Bankruptcy Code requires.

With some exceptions,[3] all unpaid Administrative Expenses, Allowed Priority Tax Claims, U.S. Trustee fees, and Priority Non-Tax Claims (Class 1) that are due and unpaid as of the Effective Date will be paid in Cash in full shortly after the Effective Date of the Plan (or as otherwise agreed to by the parties). Distributions to be made to holders of Allowed Claims in the all other Classes are as follows:

Class 2 – Secured Tax Claims.  A holder of an Allowed Secured Tax Claim shall be paid on account of its Allowed Secured Tax Claim the amount of such Allowed Claim, plus interest as provided herein, at the Reorganized Debtor's option: (1) in substantially equal quarterly Cash payments, with first payment due on April 1, 2024, and continuing quarterly with payment due on the first day of each quarter, with the last quarterly payment due January 1, 2028, *provided however*, if a Closing were to occur prior to the January 1, 2028, the unpaid balance of the Allowed Secured Tax Claim together with accrued and unpaid interest thereon, shall be paid on the Post-Closing Date Distribution Date; or (2) pursuant to such other treatment as may be agreed to by the Debtor (or Reorganized Debtor, as appropriate) and the holder of the Allowed Secured Tax Claim.  The Liens securing each Allowed Secured Property Claim shall remain in full force and effect until such Allowed Secured Property Tax Claim is fully treated in accordance with the Plan.

Class 3 – Kingsgate Secured Claim.  The holder of the Allowed Kingsgate Secured Claim shall receive, on or before the Post-Effective Date Distribution Date, the Kingsgate Secured Note, the form of which shall be submitted as a Plan Document. The Kingsgate Secured Note shall be in the original principal amount equal to the amount of the Allowed Kingsgate Secured Claim. The unpaid principal balance of the Kingsgate Secured Note shall bear interest at the rate of 5.838% per annum (based upon a 2 Year Treasury as of May 3, 2023, of 3.838% plus 200bps spread (2%) of risk premium). The Kingsgate Secured Note shall provide for monthly payments of accrued interest only for the term of the note. The unpaid principal balance of the Kingsgate Secured Note, together with any accrued and unpaid interest thereon, shall be fully due and payable upon the first to occur of (i) the tenth (10th) day after the Closing Date, or (ii) December 31, 2024. The Liens securing the Allowed Kingsgate Secured Claim shall remain in full force and effect in the same priority and validity as existed on the

---

[3] These exceptions include fees and expenses of Estate Professionals, which will be paid only by application therefor and an order of the Bankruptcy Court.

Petition Date until the Allowed Kingsgate Secured Claim is fully treated in accordance with the Plan.

<u>Class 4 – Other Secured Claims</u>. At the option of the Reorganized Debtor, each holder of an Allowed Other Secured Claim shall receive, on or before the Post-Closing Date Distribution Date, (i) the collateral securing such Allowed Other Secured Claim; (ii) Cash in the full amount of the Allowed Other Secured Claim plus any accrued and unpaid interest thereon accruing at the rate of 5.838% per annum commencing from the Effective Date of the Plan to the date Distribution is made; or (iii) such other treatment as may be agreed to in writing by the holder of such Allowed Other Secured Claim and the Reorganized Debtor. The Liens securing each Allowed Other Secured Claim shall remain in full force and effect until such Allowed Other Secured Claim is fully treated in accordance with the Plan.

<u>Class 5 – Estate of DeSalvo Unsecured Claim</u>. The holder of the Estate of DeSalvo Unsecured Claim shall receive, to the extent of the Allowed amount of such Claim, Cash equal to the Allowed amount of such Claim on or before the Post-Closing Date Distribution Date.

<u>Class 6 – General Unsecured Claims</u>. This class includes all General Unsecured Claims other than the Estate of DeSalvo Unsecured Claim or the Painted Tree Claim. Each holder of an Allowed General Unsecured Claim shall receive, on account of such Allowed Claim, Cash equal to the Allowed amount of such Claim on or before the Post-Closing Date Distribution Date.

<u>Class 7 – Painted Tree Claim</u>. The Painted Tree Claim in the amount as set forth in Exhibit 2 of the Plan (the "<u>Painted Tree Cure Amount</u>") shall be satisfied by: (i) monthly rent credited toward the Painted Tree Cure Amount until the amount is satisfied in full, and (ii) in the event a Closing takes place prior to the satisfaction in full of the Painted Tree Cure Amount as set forth in (i) above, all remaining balance of the Painted Tree Cure Amount shall be paid on or before the Post-Closing Date Distribution Date.

<u>Class 8 – Interests</u>. Each holder of an Allowed Interest in the Debtor shall retain each of their Allowed Interest from and after the Effective Date. In the event of a sale of the Property, each holder of an Allowed Interest in the Debtor shall receive a Pro Rata Share of any Net Proceeds remaining after completion of the full treatment, in accordance with the Plan, of all Allowed Administrative Expenses, Allowed Priority Claims (Class 1), Allowed Property Tax Claims (Class 2), the Allowed Kingsgate Secured Claim (Class 3), Allowed Other Secured Claims (Class 4), Allowed Estate of DeSalvo Unsecured Claim (Class 5), Allowed General Unsecured Claims (Class 6), and the Painted Tree Claim (Class 7).

<u>Tenant Leases</u>. All Tenant Leases at the Property are assumed under the Plan.

## V. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

THE PLAN AND ITS RELATED TAX CONSEQUENCES ARE COMPLEX. MOREOVER, MANY OF THE INTERNAL REVENUE CODE PROVISIONS DEALING WITH THE FEDERAL INCOME TAX ISSUES ARISING FROM THE PLAN HAVE BEEN THE SUBJECT OF RECENT LEGISLATION AND, AS A RESULT, MAY BE SUBJECT TO AS YET UNKNOWN ADMINISTRATIVE OR JUDICIAL INTERPRETATIONS. THE DEBTOR HAVE NOT

REQUESTED A RULING FROM THE INTERNAL REVENUE SERVICE (THE "IRS") OR AN OPINION OF COUNSEL WITH RESPECT TO THESE MATTERS. ACCORDINGLY, NO ASSURANCE CAN BE GIVEN AS TO THE INTERPRETATION THAT THE IRS WILL ADOPT. THERE ALSO MAY BE STATE, LOCAL OR OTHER TAX CONSIDERATIONS APPLICABLE TO EACH CREDITOR. CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND OTHER TAX LAWS.

## VI. CONFIRMATION OF THE PLAN

**A.      Solicitation of Votes; Voting Procedures**

**1.      Ballots and Voting Deadlines**

A Ballot to be used for voting to accept or reject the Plan, together with a postage-paid return envelope, is enclosed with all copies of this Disclosure Statement mailed to all holders of Claims and Interests entitled to vote. BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY THE INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT.

The Bankruptcy Court has directed that, in order to be counted for voting purposes, Ballots for the acceptance or rejection of the Plan must be received by the balloting agent no later than **5:00 P.M., CENTRAL TIME, ON _____,** at the following address:

> Chestnut Ridge Associates Ballot
> Forshey Prostok LLP
> Attn: Kristina Hartogh
> 777 Main Street, Suite 1550
> Fort Worth, Texas 76102

YOUR BALLOT MAY NOT BE COUNTED IF IT IS RECEIVED AT THE ABOVE ADDRESS AFTER **5:00 P.M., CENTRAL TIME, ON _____.**

**2.      Parties-in-Interest Entitled to Vote**

The holder of a Claim or Interest may vote to accept or reject the Plan only if the Plan impairs the Class in which such Claim or Interest is classified. Under the Plan, Class 1 is Unimpaired. Classes 2 through 7 are Impaired. Accordingly, only holders of Claims in Classes 2, 3, 4, 5, 6 and 7 and holders of Interests in Class 8 are entitled to vote on the Plan.

Any Claim or Interest as to which an Objection has been filed is not entitled to vote unless the Bankruptcy Court, upon application of the holder to whose Claim or Interest an Objection has been made, temporarily allows such Claim or Interest in an amount that it deems proper for the purpose of accepting or rejecting the Plan. Any such application must be heard and determined by the Bankruptcy Court on or before commencement of the Confirmation Hearing. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

IF YOU HAVE ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT COUNSEL FOR THE DEBTOR AT THE FOLLOWING ADDRESS:

> Jeff P. Prostok
> Emily S. Chou
> Dylan T.F. Ross
> **FORSHEY PROSTOK LLP**
> 777 Main Street, Suite 1550
> Fort Worth, Texas 76102
> Telephone: (817) 877-8855
> Facsimile: (817) 877-4151
> jprostok@fosheyprostok.com
> echou@forsheyprostok.com
> dross@forsheyprostok.com

### 3. Vote Required for Class Acceptance

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if at least two-thirds in amount and a majority in number of the holders of claims voting cast their ballots in favor of acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of interests as acceptance by holders of at least two-thirds in amount of the interests of that class that actually cast ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if at least two-thirds in amount of the holders of interests voting cast their ballots in favor of acceptance.

## B. Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Pursuant to the Solicitation Order, the Confirmation Hearing has been scheduled for _____, at ____.m. Central Time, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. In addition to considering confirmation of the Plan, the Bankruptcy Court will consider final approval of this Disclosure Statement at such hearing.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan and/or final approval of this Disclosure Statement must be made in writing and filed with the Bankruptcy Court on or before **5:00 P.M., CENTRAL TIME, ON** _____, at the following address:

---

Office of the Clerk
United States Bankruptcy Court
Bob Casey United States Courthouse
515 Rusk Street
Houston, TX 77002

In addition, any such objection must be served, together with proof of service, (a) on any parties who have filed notices of appearance and requests for notice in the Chapter 11 Cases and (b) upon the following parties on or before **5:00 P.M., CENTRAL TIME, ON** _____:

Jeff P. Prostok
Emily S. Chou
Dylan T.F. Ross
**FORSHEY PROSTOK LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@fosheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

Office of the United States Trustee
Attn: Alicia Lenae Barcomb
      Jayson B. Ruff
515 Rusk Street, Suite 3516
Houston, Texas 77002
Telephone: (713) 718-4650
Facsimile : (713) 718-4670
alicia.barcomb@usdoj.gov
jayson.b.ruff@usdoj.gov

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

**C.     Requirements for Confirmation of the Plan**

At the Confirmation Hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

1.      The Plan complies with the applicable provisions of the Bankruptcy Code.

2.      The proponent of the Plan complied with the applicable provisions of the Bankruptcy Code.

3.      The Plan has been proposed in good faith and not by any means forbidden by law.

4.      Any payment made or promised by the Debtor, by the Plan proponent, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

5.      (a)      (i)      The proponent of the Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the Plan; and

(ii)      the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(b)      the proponent of the Plan has disclosed the identity of any Insider that will be employed or retained by the Reorganized I Debtor, and the nature of any compensation for such Insider.

6.      Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

7.      With respect to each Impaired Class of Claims or Interests:

(a)      each holder of a Claim or Interest of such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date; or

(b)      if section 1111(b)(2) of the Bankruptcy Code applies to the Claims of such Class, the holder of a Claim of such Class will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's Interest in the Estate's Interest in the property that secures such Claim.

8.      With respect to each Class of Claims or Interests:

(a)      such Class has accepted the Plan; or

(b)      such Class is not Impaired under the Plan.

9.      Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that:

(a)      with respect to a Claim of a kind specified in section 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the Effective Date of the Plan, the holder of such Claim will receive on account of such Claim cash equal to the Allowed amount of such Claim;

(b)      with respect to a Class of Claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, each holder of a Claim of such Class will receive:

(i)      if such Class has accepted the Plan, deferred cash payments of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; or

(ii)     if such Class has not accepted the Plan, Cash on the Effective Date of the Plan equal to the Allowed amount of such Claim; and

(c)     with respect to a Claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such Claim will receive on account of such Claim regular installment payments in Cash:

(i)     of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim;

(ii)     over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(iii)     in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (other than Cash payments made to a Class of Creditors under section 1122(b) of the Bankruptcy Code); and

(d)     with respect to a Secured Claim which would otherwise meet the description of an unsecured Claim of a Governmental Unit under section 507(a)(8) of the Bankruptcy Code, but for the secured status of that Claim, the holder of that Claim will receive on account of that Claim, Cash payments, in the same manner and over the same period, as prescribed in 9(c) above.

10.     If a Class of Claims is Impaired under the Plan, at least one Class of Claims that is Impaired has accepted the Plan, determined without including any acceptance of the Plan by any Insider holding a Claim of such Class.

11.     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

12.     All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, have been paid or the Plan provides for the payments of all such fees on the Effective Date of the Plan.

13.     The Plan provides for the continuation after its Effective Date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the Plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

14.     If the Debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the Debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

15.     In a case in which a debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan:

(a)     the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(b)     the value of the property to be distributed under the plan is not less than the projected disposable income of such debtor (as defined in section 1325(b)(2) of the Bankruptcy Code) to be received during the five-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

16.     All transfers of property under the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

The Debtor believes that holders of all Allowed Claims and Interests Impaired under the Plan will receive payments under the Plan having a present value, as of the Effective Date, not less than the amounts likely to be received if the Debtor were liquidated in a case under chapter 7 of the Bankruptcy Code. At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Interests would receive greater Distributions under the Plan than they would receive in a liquidation under chapter 7.

These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

**D.     Cramdown**

In the event that any Impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Plan proponent if, as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A plan of reorganization "does not discriminate unfairly" within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for their claims or interests.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

1.     With respect to a class of secured claims, the plan provides:

(a)     (i)     that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)     that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a

value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)     for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)     the realization by such holders of the "indubitable equivalent" of such claims.

2.     With respect to a class of unsecured claims, the plan provides:

(a)     that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)     the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 of the Bankruptcy Code, subject to the requirements of section 1129(a)(14) of the Bankruptcy Code.

3.     With respect to a class of interests, the plan provides:

(a)     that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)     that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

In the event that one or more Classes of impaired Claims or Interests reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired Class of Claims or Interests. For the reasons set forth above, the Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired Class of Claims or Interests.

## VII. RISK FACTORS

The following is intended as a summary of certain risks associated with the Plan, but it is not exhaustive and must be supplemented by the analysis and evaluation made by each holder of a Claim or Interest of the Plan and this Disclosure Statement as a whole with such holder's own advisors.

A.      **Insufficient Acceptances**

For the Plan to be confirmed, each impaired Class of Claims or Interests is given the opportunity to vote to accept or reject the Plan. With regard to such Impaired voting Classes, the Plan will be deemed accepted by a Class of Impaired Claims if the Plan is accepted by Claimants of such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the total Allowed Claims of the Class voted. The Plan will be deemed accepted by a Class of Impaired Interests if the Plan is accepted by holders of Interests in such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount of the total Allowed Interests in the Class voted. Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes. The Debtor reserves the right to request confirmation pursuant to the cramdown provisions in section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular Class of Claims or Interests has not accepted the Plan. However, there can be no assurance that any Impaired Class of Claims or Interests under the Plan will accept the Plan or that the Debtor would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

B.      **Confirmation Risks**

The following specific risks exist with respect to confirmation of the Plan:

1.      Any objection to confirmation of the Plan can either prevent confirmation of the Plan or delay such confirmation for a significant period of time.

2.      Since the Plan proponent may be seeking to obtain approval of the Plan over the rejection of one or more Impaired Classes of Claims or Interests, the cramdown process could delay confirmation.

C.      **Inability to Sell the Property Upon Favorable Terms or Unavailability of Refinancing**

The Debtor is confident that it can market and sell the Property for a sufficient price prior to December 31, 2024, when the Kingsgate Secured Note becomes due and payable, to permit full payment of all Allowed Secured Claims and Allowed General Unsecured Claims and a distribution of some amount to holders of Allowed Interests. However, market and other factors outside the control of the Debtor will significantly affect the available terms of such a sale, and the Debtor cannot guarantee that it can obtain any particular price or range of prices for the Property.

Absent a sale of the Property, the Debtor cannot guarantee refinancing can be obtained in sufficient amounts that will permit full payment of all Secured Claims and Allowed General Unsecured Claims.

D.      **Estimated Distributions under the Plan**

In preparing the estimate of distributions under the Plan, the Estate's financial advisors have made certain estimates regarding projected cash on hand at confirmation. The accuracy of

such estimates is dependent upon several variables that are partially or wholly outside the Debtor's control or ability to predict with certainty, including (i) the aggregate amount of Allowed Claims, (ii) the amount, if any, for which certain Administrative Expenses are Allowed, (iii) the collectability of the Estate's accounts receivable, and (iv) the amount of the expenses and fees of professionals engaged by the Debtor. Accordingly, while such estimations were prepared in good faith and with the best information available, actual distributions received by holders of Allowed Claims under the Plan may vary significantly from estimated distributions.

## VIII. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Continuation of the Chapter 11 Case

Continuing operations in chapter 11 under the Debtor's existing financial structure is untenable. The Debtor's current income is insufficient to service the secured debt to Kingsgate as such debt is currently configured. The Debtor believes that confirmation and consummation of the Plan offers the best chance for full payment to unsecured creditors and a significant distribution to interest holders.

### B.    Alternative Plan of Reorganization

The Debtor has the exclusive right to file a plan of reorganization in the Chapter 11 Case through June 5, 2023, or through such other date as the Bankruptcy Court may establish (in either case, the "Exclusive Date"). After the Exclusive Date, if no plan of organization has been confirmed, any party in interest is free to file an alternative plan at any time. At this time, the Plan is the only plan of reorganization that has been proposed and filed in the Chapter 11 Case. If the Plan is not confirmed, an alternative plan filed by another party-in-interest, or an amended Plan filed by the Debtor, might ultimately be confirmed by the Bankruptcy Court. However, the Debtor thinks it highly unlikely that an alternative plan could be proposed and confirmed that would compensate creditors and interest holders for the increased costs of administration and delay that awaiting such a plan would create.

### C.    Chapter 7 Liquidation

If the Plan is not confirmed, the Chapter 11 Case may potentially be converted to a case under chapter 7 of the Bankruptcy Code at a later date if such a request is made and granted by the Bankruptcy Court. Attached to this Disclosure Statement as **Exhibit C** is a liquidation analysis prepared by the Debtor's financial professionals. The liquidation analysis shows that a chapter 7 liquidation may result in a significantly lower distribution to creditors than if the Plan is confirmed and consummated. The Debtor believes that liquidation of the Estate under chapter 7 is not in the best interest of creditors or interest holders. First, the Debtor thinks it unlikely that a chapter 7 trustee could obtain as high a price for the Property as the Debtor is likely to obtain from a sale after emerging from the Chapter 11 Case. Second, conversion to chapter 7 is likely to diminish the value to be realized by holders of Allowed Claims and Allowed Interests because of additional administrative expenses involved in the appointment of a chapter 7 trustee, attorneys, accountants, and other professionals to assist the trustee in a chapter 7 case. The Debtor believes that the highest and best value for the Property, and the maximum return for unsecured creditors and interest holders, will be obtained through confirmation of the Plan and

the Debtor's marketing and sale of the Property or obtaining refinancing to satisfy all Allowed Secured and General Unsecured Claims.

## IX. CONCLUSION

The Debtor urges holders of Claims in impaired Classes to vote to **ACCEPT** the Plan and to evidence such acceptance by returning their Ballots so that they will be received on or before **5:00 P.M., CENTRAL TIME, ON _____.**

*[Remainder of page intentionally left blank]*

Dated:  May 8, 2023

Respectfully submitted,

CHESTNUT RIDGE ASSOCIATES LLC

By: _____
Andrew Schreer
Manager and Managing Member

Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@fosheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

**ATTORNEYS FOR THE
DEBTOR AND DEBTOR-IN-POSSESSION**

L:\JPROSTOK\CHESTNUT RIDGE ASSOCIATES, LLC #6374\DS & PLAN\FOR FILING MAY 8\DISCLOSURE STATEMENT (MAY 8).DOCX

# EXHIBIT A

# PLAN

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | CHAPTER 11 |
|  | ) |  |
| CHESTNUT RIDGE ASSOCIATES LLC, | ) | CASE NO. 23-90069 (DRJ) |
|  | ) |  |
| DEBTOR. | ) |  |
|  | ) |  |

**CHAPTER 11 PLAN OF REORGANIZATION FOR**
**CHESTNUT RIDGE ASSOCIATES LLC**

Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@fosheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

**ATTORNEYS FOR THE DEBTOR AND**
**DEBTOR-IN-POSSESSION**

DATED: May 8, 2023

**ARTICLE I.**
**DEFINITIONS**

A.      <u>Defined Terms</u>. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.   "<u>Administrative Bar Date</u>" means the deadline to file a Claim for Allowance as an Administrative Expense set forth in section 3.01(a) of the Plan.

1.02.   "<u>Administrative Expense</u>" means any cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

1.03.   "<u>Affiliate</u>" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.04.   "<u>Allowed</u>," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, that if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "<u>Allowed</u>," when used with respect to an Administrative Expense, means an Administrative Expense, other than uncontested Ordinary Course Administrative Expense, approved by application to the Bankruptcy Court.

1.05.   "<u>Assets</u>" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor or the Estate as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtor or the Estate through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all of the following: Estate Claims, Estate Defenses, and Executory Contracts.

1.06.   "<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

1.07.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court having jurisdiction over all or any part of the Chapter 11 Case.

1.08.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including applicable local rules of the Bankruptcy Court.

1.09.    "<u>Bar Date</u>" means the deadline established by the Bankruptcy Court for filing a proof of Claim in the Chapter 11 Case as applicable to a particular Claimant.

1.10.    "<u>Business Day</u>" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.11.    "<u>Cash</u>" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.12.    "<u>Chapter 11 Case</u>" refers to the above-captioned chapter 11 bankruptcy case of Chestnut Ridge Associates LLC, case number 23-90069 (DRJ), pending in the Bankruptcy Court.

1.13.    "<u>Claim</u>" means (a) a right to payment against the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.14.    "<u>Claimant</u>" means the holder of a Claim.

1.15.    "<u>Class</u>" means a class of Claims or Interests as described in the Plan.

1.16.    "<u>Closing</u>" means the closing of (1) a sale of the Property, or (2) a refinancing transaction that generates sufficient funds to make the Distributions on Allowed Claims as provided in this Plan.

1.17.    "<u>Closing Date</u>" means the date on which the Closing occurs.

1.18.    "<u>Collateral</u>" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.19.    "<u>Confirmation Date</u>" means the date of entry of the Confirmation Order.

1.20.    "<u>Confirmation Hearing</u>" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.21.    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.22.    "<u>Contested</u>," when used with respect to a Claim, means a Claim (a) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (c) a proof of Claim as to which an objection has been, or may be, timely filed and the objection has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.23.    "<u>Creditor</u>" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.24.    "<u>Cure Claim</u>" means the payment or other performance required to cure existing default under an Executory Contract for purposes of assumption of such Executory Contract as required by section 365 of the Bankruptcy Code.

1.25.    "<u>Debtor</u>" means Chestnut Ridge Associates LLC, the debtor and debtor-in-possession in the Chapter 11 Case.

1.26.    "<u>Disallowed</u>," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order and such amount Disallowed shall not be entitled to any Distribution.

1.27.    "<u>Disclosure Statement</u>" means the *Disclosure Statement for Chapter 11 Plan of Reorganization for Chestnut Ridge Associates LLC* dated _____ filed with respect to the Plan, and conditionally approved by the Bankruptcy Court on _____, 2023, and as it may be amended, modified, or supplemented from time to time.

1.28.    "<u>Distribution</u>" means any payment or other disbursement of property to be made by the Reorganized Debtor pursuant to the Plan.

1.29.    "<u>Effective Date</u>" means the first Business Day that is at least fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the Effective Date set forth in Article XI below are satisfied.

1.30.    "<u>Estate</u>" shall refer to the bankruptcy estate of the Debtor in the Chapter 11 Case.

1.31.    "<u>Estate Claims</u>" means all claims and causes of action held by the Debtor's Estate as described, identified, and listed on the attached **Exhibit 1**.  Exhibit 1 may be supplemented or modified through a document filed as a Plan Documents.

1.32.    "<u>Estate Defenses</u>" means all defenses, affirmative defenses, counterclaims, or offsets by the Estate against any Person, including but not limited to any Creditor, and listed on **Exhibit 1**.  Exhibit 1 may be supplemented or modified through a document filed as a Plan Documents.

1.33.    "<u>Estate of DeSalvo Unsecured Claim</u>" means any and all Claims asserted by the Estate of Joseph DeSalvo.

1.34.    "<u>Estate Professionals</u>" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 363, and 1103 of the Bankruptcy Code and who are entitled to compensation or reimbursement pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

1.35.    "<u>Executory Contract</u>" means any executory contract or unexpired lease, including the Tenant Leases, to which the Debtor is a party and which is subject to section 365 of the Bankruptcy Code.

1.36.    "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.37.    "<u>General Unsecured Claim</u>" means any Claim that is not a Claim for an Administrative Expense, a Priority Claim, a Secured Claim, the Estate of DeSalvo Unsecured Claim, or the Painted Tree Claim.

1.38.    "<u>Governmental Unit</u>" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.39.    "<u>Impaired</u>," when referring to a Class of Claims or Interests, means a Class that is impaired as such term is defined in section 1124 of the Bankruptcy Code.

1.40.    "<u>Insider</u>" means a Person described in section 101(31) of the Bankruptcy Code.

1.41.    "<u>Interests</u>" means any equity interest or membership interest in the Debtor.

1.42.    "<u>Kingsgate Secured Claim</u>" means, collectively, any and all Secured Claims held or asserted by Kingsgate Partner, LLC.

1.43.    "<u>Kingsgate Secured Note</u>" means the secured promissory note to be executed and delivered by the Reorganized Debtor in treatment of the Kingsgate Secured Claim. The Kingsgate Secured Note is described more fully in section 4.03 of the Plan.

1.44.    "<u>Lien</u>" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor contemplated by section 101(37) of the Bankruptcy Code.

1.45.    "<u>Net Proceeds</u>" means all monetary consideration received by the Reorganized Debtor or its designee(s) for the sale of the Property *less* any fee or other compensation that the Reorganized Debtor pays for brokerage services rendered directly in connection with such sale of the Property.

1.46.    "<u>Objection</u>" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.47.    "<u>Objection Deadline</u>" means the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.48.    "<u>Other Secured Claim</u>" means any Secured Claim that is not a Secured Tax Claim or the Kingsgate Secured Claim.

1.49.    "<u>Painted Tree Claim</u>" shall have the meaning set forth in section 4.07(a) of the Plan.

1.50.    "<u>Person</u>" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.51.    "<u>Petition Date</u>" means February 5, 2023.

1.52.    "<u>Plan</u>" means this chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

1.53.    "<u>Plan Documents</u>" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.54.    "<u>Post-Closing Date Distribution Date</u>" has the meaning set forth in section 7.02(b) of the Plan.

1.55.    "<u>Post-Effective Date Distribution Date</u>" has the meaning set forth in section 7.02(a) of the Plan.

1.56.   "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.57.   "Priority Non-Tax Claim" means any Priority Claim that is not a Priority Tax Claim.

1.58.   "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code other than a Secured Tax Claim.

1.59.   "Pro Rata Share" means, as to the holder of a specific Allowed Interest, the ratio that the amount of such holder's Allowed Interest bears to the aggregate amount of all Allowed Interests included in the particular Class in which such holder's Interest is included.

1.60.   "Property" means that certain real property of approximately 14.87 acres, located at 1113-1387 Kingwood Drive, Humble, Texas, known as The Shoppes at Kingsgate, and all improvements thereon.

1.61.   "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract. For all purposes in this Plan, any Rejection Claim shall be considered and treated as a General Unsecured Claim.

1.62.   "Reorganized Debtor" means the Debtor from and after the Effective Date.

1.63.   "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.64.   "Secured Claim" means (a) a Claim secured by a Lien against any Assets, to the extent such Lien is valid, perfected, and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets that secures payment of the Claim (except, if the holder of such Claim makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be a Secured Claim), or (b) a Claim that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to setoff as provided in section 506(a) of the Bankruptcy Code.

1.65.   "Secured Tax Claims" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.66.   "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.67.   "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.68.   "Tenant" means any present (as of the Effective Date) Person who is a tenant at the Property pursuant to a lease agreement between such Person, as such tenant, and the Debtor, as landlord.

1.69.   "Tenant Lease" means a lease between the Debtor, as landlord, and any person, as tenant, at the Property, and that is in effect, and has not expired or been terminated, immediately before the Effective Date.

1.70.   "Unclaimed Property" means any cash, Distribution, or any other property of the Reorganized Debtor unclaimed for a period of one (1) year after the applicable Plan Distribution Date.

1.71.   "Unimpaired" means, when used with reference to a Class of Claims or Interests, a Class that is not impaired as such term is defined in section 1124 of the Bankruptcy Code.

1.72.   "U.S. Trustee" means the Office of the United States Trustee operating by and through the regional office(s) thereof having oversight responsibilities with respect to the Chapter 11 Case.

1.73.   "U.S. Trustee Fees" means the quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) in the Chapter 11 Case.

B.   Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

C.   Other Terms. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

D.   Exhibits and Plan Documents. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to

the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1550, Fort Worth, Texas 76102, Attention: Kristina Hartogh; fax number (817) 877-4151; email: khartogh@forsheyprostok.com.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01.   The following is a designation of the Classes of Claims and Interests under the Plan. Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and the treatment of such Claims is set forth in Article III of the Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

Class 1 – Priority Non-Tax Claims
Class 2 – Secured Tax Claims
Class 3 – Kingsgate Secured Claim
Class 4 – Other Secured Claims
Class 5 – Estate of DeSalvo Unsecured Claim
Class 6 – General Unsecured Claims
Class 7 – Painted Tree Claim
Class 8 – Interests

2.02.   <u>Impaired Classes of Claims and Interests</u>. Class 1 is Unimpaired. Classes 2, 3, 4, 5, 6, 7 and 8 are Impaired.

2.03.   <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE III.
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01.   <u>Administrative Expenses</u>

(a)   <u>Ordinary Course Administrative Claims</u>. Administrative Expenses that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court (the "<u>Ordinary Course Administrative Claims</u>") shall be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transaction giving rise to such post-petition Claims without any further action by the holders of such Ordinary Course Administrative Claims. The remaining provisions of this section 3.01 shall not apply to the Ordinary Course Administrative Claims, except that if there is a dispute relating to any such Ordinary Course Administrative Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the

provisions of Article IX below relating to Contested Claims and require the holder of the Contested Ordinary Course Administrative Claim to assert such Claim through the Chapter 11 Case.

(b)     Administrative Bar Date. Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim of an Estate Professional, an Ordinary Course Administrative Claim, or an Administrative Expense that is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written request for payment of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "**Administrative Bar Date**." Such written request shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. **Failure to timely and properly file and serve such request by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution from the Reorganized Debtor on account of such Claim for an Administrative Expense**.

(c)     Allowance. A Claim for an Administrative Expense for which a proper request for payment was filed and served pursuant to (a) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such request. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(d)     Determination. If the Reorganized Debtor asserts any Estate Defense as a defense to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

(e)     Estate Professionals. The procedures contained in subsections 3.01(b)-(d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.01(f) below .

(f)     Treatment. Each holder of an unpaid Allowed Administrative Expense, other than an Ordinary Course Administrative Claim, shall receive from the Reorganized Debtor (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other

treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor.

3.02.   <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall receive (a) in one Cash payment an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Reorganized Debtor.

3.03.   <u>U.S. Trustee Fees</u>. On the Effective Date or as soon thereafter as is practicable, the Reorganized Debtor shall pay all U.S. Trustee Fees that are due and payable as of the Confirmation Date. From and after the Confirmation Date, the Reorganized Debtor shall continue to pay all U.S. Trustee Fees as they accrue until a final decree is entered and the Chapter 11 Case is closed. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee a quarterly financial report for each quarter, or portion thereof, that the Chapter 11 Case remains open.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.01.   <u>Class 1 – Priority Non-Tax Claims</u>

(a)   <u>Treatment</u>. Each holder of an Allowed Priority Non-Tax Claim, to the extent not previously paid, shall receive, (a) on or before the Post-Effective Date Distribution Date, one Cash payment in an amount equal to the amount of such Allowed Priority Non-Tax Claim; or (b) such other treatment as may be agreed to in writing by the holder of such Allowed Priority Non-Tax Claim and the Reorganized Debtor.

(b)   <u>Impairment</u>. Class 1 is Unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote to accept or reject the Plan. The Debtor will not solicit the votes of Class 1 Claimants regarding the Plan.

4.02.   <u>Class 2 – Secured Tax Claims</u>

(a)   <u>Treatment</u>. Each holder of an Allowed Secured Tax Claim shall be paid, and treated as follows:

(i)   A holder of an Allowed Secured Tax Claim shall be paid on account of its Allowed Secured Tax Claim the amount of such Allowed Claim, plus interest as provided herein, at the Reorganized Debtor's option: (1) in substantially equal quarterly Cash payments, with first payment due on April 1, 2024, and continuing quarterly with payment due on the first day of each quarter, with the last quarterly payment due January 1, 2028, *provided however*, if a Closing were to occur prior to the January 1, 2028, the unpaid balance of the Allowed Secured Tax Claim together with accrued and unpaid interest

thereon, shall be paid on the Post-Closing Date Distribution Date; or (2) pursuant to such other treatment as may be agreed to by the Debtor (or Reorganized Debtor, as appropriate) and the holder of the Allowed Secured Tax Claim.

(ii)     Interest on Allowed Secured Tax Claims shall accrue as follows: beginning on the date any portion of the tax underlying the Allowed Property Tax Claim becomes delinquent under state law, and to the extent of such delinquency, interest shall accrue on the delinquent unpaid tax at the state statutory rate of 12% per annum in compliance with sections 511 and 1129 of the Bankruptcy Code.

(iii)     The Liens securing each Allowed Secured Tax Claim shall remain in full force and effect until such Allowed Property Tax Claim is fully treated in accordance with this Plan.

(b)     <u>Impairment</u>. Class 2 is Impaired. Holders of Class 2 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 2 Claimants regarding the Plan.

4.03.     <u>Class 3 – Kingsgate Secured Claim</u>

(a)     <u>Treatment</u>. The holder of the Allowed Kingsgate Secured Claim shall receive, on or before the Post-Effective Date Distribution Date, the Kingsgate Secured Note, the form of which shall be submitted as a Plan Document. The Kingsgate Secured Note shall be in the original principal amount equal to the amount of the Allowed Kingsgate Secured Claim. The unpaid principal balance of the Kingsgate Secured Note shall bear interest at the rate of 5.838% per annum (based upon a 2 Year Treasury as of May 3, 2023, of 3.838% plus 200bps spread (2%) of risk premium). The Kingsgate Secured Note shall provide for monthly payments of accrued interest only for the term of the note. The unpaid principal balance of the Kingsgate Secured Note, together with any accrued and unpaid interest thereon, shall be fully due and payable upon the first to occur of (i) the tenth (10th) day after the Closing Date, or (ii) December 31, 2024. The Liens securing the Allowed Kingsgate Secured Claim shall remain in full force and effect in the same priority and validity as existed on the Petition Date until the Allowed Kingsgate Secured Claim is fully treated in accordance with this Plan.

(b)     <u>Impairment</u>. Class 3 is Impaired. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan. The Debtor will solicit the vote of the Class 3 Claimant regarding the Plan.

4.04.     <u>Class 4 – Other Secured Claims</u>

(a)     <u>Treatment</u>. At the option of the Reorganized Debtor, each holder of an Allowed Other Secured Claim shall receive, on or before the Post-Closing Date Distribution Date,

(i)     the collateral securing such Allowed Other Secured Claim;

(ii)      Cash in the full amount of the Allowed Other Secured Claim plus any accrued and unpaid interest thereon accruing at the rate of 5.383% per annum commencing from the Effective Date of the Plan to the date Distribution is made; or

(iii)      such other treatment as may be agreed to in writing by the holder of such Allowed Other Secured Claim and the Reorganized Debtor.

(b)      <u>Liens</u>. The Liens securing each Allowed Other Secured Claim shall remain in full force and effect until such Allowed Other Secured Claim is fully treated in accordance with this Plan.

(c)      <u>Impairment</u>. Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 4 Claimants regarding the Plan.

4.05.   <u>Class 5 – Estate of DeSalvo Unsecured Claim</u>

(a)      <u>Treatment</u>.  The holder of the Estate of DeSalvo Unsecured Claim shall receive, to the extent of the Allowed amount of such Claim, Cash equal to the Allowed amount of such Claim on or before the Post-Closing Date Distribution Date.

(b)      <u>Impairment</u>. Class 5 is Impaired. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 5 Claimants regarding the Plan.

4.06.   <u>Class 6 – General Unsecured Claims</u>

(a)      <u>Treatment</u>. Each holder of an Allowed General Unsecured Claim shall receive, on account of such Allowed Claim, Cash equal to the Allowed amount of such Claim on or before the Post-Closing Date Distribution Date.

(b)      <u>Impairment</u>. Class 6 is Impaired. Holders of Class 6 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 6 Claimants regarding the Plan.

4.07.   <u>Class 7 – Painted Tree Claim</u>

(a)      <u>Treatment</u>.   The Painted Tree Claim in the amount as set forth in Exhibit 2 of this Plan as the Proposed Cure Claim for Painted Tree Kingwood, LLC (the "<u>Painted Tree Cure Amount</u>") shall be satisfied by: (i) monthly rent credited toward the Painted Tree Cure Amount until the amount is satisfied in full, and (ii) in the event a Closing takes place prior to the satisfaction in full of the Painted Tree Cure Amount as set forth in (i) above, all remaining balance of the Painted Tree Cure Amount shall be paid on or before the Post-Closing Date Distribution Date.

(b)    <u>Impairment</u>. Class 7 is Impaired. Holders of Class 7 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 7 Claimants regarding the Plan.

4.08.   <u>Class 8 – Interests</u>

(a)    <u>Treatment</u>. Each holder of an Allowed Interest in the Debtor shall retain each of their Allowed Interest from and after the Effective Date.  In the event of a sale of the Property, each holder of an Allowed Interest in the Debtor shall receive a Pro Rata Share of any Net Proceeds remaining after completion of the full treatment, in accordance with the Plan, of all Allowed Administrative Expenses, Allowed Priority Claims (Class 1), Allowed Property Tax Claims (Class 2), the Allowed Kingsgate Secured Claim (Class 3), Allowed Other Secured Claims (Class 4), Allowed Estate of DeSalvo Unsecured Claim (Class 5), Allowed General Unsecured Claims (Class 6), and the Painted Tree Claim (Class 7).

(b)    <u>Impairment</u>. Class 8 is Impaired. Holders of Class 8 Interests are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 8 Interests regarding the Plan.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF THE PLAN

5.01.   <u>Classes Entitled to Vote</u>. Creditors in Classes 2, 3, 4, 5, 6, and 7, and Interest holders in Class 8 are entitled to vote and shall vote separately to accept or reject the Plan. Any Unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any Unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.02.   <u>Class Acceptance Requirement</u>. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. A Class of Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.

5.03.   <u>Elimination of Vacant Classes</u>.  Any Class of Claims or Interest that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

5.04.   <u>Presumed Acceptance by Non-Voting Classes</u>.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or rejected the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

5.05.   <u>Cramdown</u>. This section shall constitute the request by the Debtor, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.01.   <u>Continued Existence of the Debtor</u>. The Debtor shall continue to exist after the Effective Date, with all the powers available to such legal entities, in accordance with applicable law and pursuant to its constituent documents. Upon the occurrence of the Effective Date, the Debtor shall be thereafter referred to as the Reorganized Debtor. The Reorganized Debtor shall have the rights and powers of a debtor-in-possession under section 1107 of the Bankruptcy Code, and such other rights, powers, and duties incident to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary.

6.02.   <u>Vesting of Assets</u>. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all of the Assets in the Estate shall vest in the Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances, and charges, except as expressly set forth in the Plan. On and after the Effective Date, the Reorganized Debtor may administer, use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses, or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

6.03.   <u>Funds Available for Distribution</u>.  The sources of funds for making Distributions will consist of Cash from operations, and (a) sale proceeds from the sale of the Property, or (b) funds from refinancing transaction.

6.04.   <u>Actions by Debtor and the Reorganized Debtor to Implement Plan</u>. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtor and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, including without limitation, (a) all transfers of Assets pursuant to the Plan; (b) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (c) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

6.05.   <u>Management of the Reorganized Debtor</u>

(a)      From and after the Effective Date, the Plan will be administered by the Reorganized Debtor.

(b)      From and after the Effective Date, the Reorganized Debtor shall be managed in accordance with applicable law and its corporate documents.  There will be no change in the Debtor's corporate documents or management upon the Effective Date.  The Reorganized Debtor shall continue to be managed by its current management, including Andrew Schreer and David Carmel.

(c)      From and after the Effective Date, the Reorganized Debtor may, among other things, use, pledge, acquire, and/or dispose of any of the Reorganized Debtor's property free of the restrictions imposed under the Bankruptcy Code and without prior Bankruptcy Code approval, *provided* that any such use, pledge, acquisition, disposition is not inconsistent with this Plan and that the Bankruptcy Court retains jurisdiction over the Reorganized Debtor and this Plan.

(d)      The Confirmation Order shall provide the Reorganized Debtor with express authority to convey, transfer, and assign any and all property of the Estate consistent with the terms of this Plan and to take all actions necessary to effectuate same.

(e)      The Reorganized Debtor shall have sole responsibility for making Distributions under the Plan to the holders of Allowed Claims and Allowed Interests.

6.06.   <u>Payment of Fees and Expenses to Professionals of the Reorganized Debtor</u>. From and after the Effective Date, the Reorganized Debtor may, without Bankruptcy Court order, employ professional persons, as such term is used in the Bankruptcy Code, to assist the Reorganized Debtor to carry out its duties under the Plan. The professionals employed by the Reorganized Debtor shall be entitled to reimbursement of their reasonable and necessary expenses incurred in carrying out its duties under the Plan before any Distributions are required to be made on account of any Allowed Claims. The professionals employed by the Reorganized Debtor shall be compensated at their respective standard hourly rates for time spent administering the implementation of the Plan and the resolution of objections to Claims, if any are asserted, without further motion or application to the Bankruptcy Court.

6.07.   <u>Post-Effective Date Service List</u>. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "<u>Service List</u>"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties that have filed a Notice of Appearance in the Chapter 11 Case, and (d) the Reorganized Debtor.

6.08.   <u>Section 505 Powers</u>. The Debtor, the Estate, and the Reorganized Debtor reserves all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto.

**ARTICLE VII.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

7.01.   Distributions.  All Distributions to be made under this Plan shall be made by the Reorganized Debtors in the manner provided in this Plan and the Confirmation Order.

7.02.   Distribution Dates

(a)   Post-Effective Date Distribution Date. The Post-Effective Date Distribution Date shall occur, (a) with respect to each Claim or Interest that is an Allowed Claim or an Allowed Interest as of the Effective Date, as soon as reasonably practicable after the Effective Date; and (b) with respect to each Claim that is not an Allowed Claim or an Allowed Interest as of the Effective Date, as soon as reasonably practicable after the date on which such Claim or Interest is Allowed.

(b)   Post-Closing Date Distribution Date. The Post-Closing Date Distribution Date shall occur, (a) with respect to each Claim or Interest that is an Allowed Claim or an Allowed Interest as of the Closing Date, as soon as reasonably practicable after the Closing Date; and (b) with respect to each Claim that is not an Allowed Claim or an Allowed Interest as of the Closing Date, as soon as reasonably practicable after the date on which such Claim or Interest is Allowed.

7.03.   Timing and Amount of Distributions. No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible pursuant to the terms of this Plan. The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.

7.04.   Means of Cash Payment. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

7.05.   Record Date for Distributions. As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims. Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Reorganized Debtor may, in the exercise of its good faith business

judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

7.06.    Delivery of Distributions. All Distributions, deliveries, and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of its sole discretion. After such date, all Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

7.07.    W-9 Forms. Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any Governmental Unit (collectively the "W-9 Form") to the Reorganized Debtor prior to receiving any Distribution from the Reorganized Debtor. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Reorganized Debtor within thirty (30) days of the Effective Date, the Reorganized Debtor shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Reorganized Debtor. The request shall be in writing and shall be delivered to the last address known to the Debtor, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Reorganized Debtor within thirty (30) days shall result in a waiver of any right or rights to a Distribution. In the event any holder of an Allowed Claim fails to provide the Reorganized Debtor with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution.

7.08.    Time Bar to Cash Payments. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued. Any request for reissuance in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

7.09.    Cure Period. Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this

Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

7.10.    Distributions after Substantial Consummation. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8007.

## ARTICLE VIII.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

8.01.    Retention of Estate Claims. As of the Effective Date, the Debtor expressly retains and transfers to the Reorganized Debtor, as of the Effective Date, any and all causes of action for avoidance or recovery arising under chapter 5 of the Bankruptcy Code or similar state or federal law that the Debtor may hold against any holder of a Claim or an Interest in the Chapter 11 Case, and any and all other claims as described, identified, and listed in **Exhibit 1**.

8.02.    Retention of Estate Defenses. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in the Reorganized Debtor. For this purpose, all Estate Defenses are hereby reserved, retained, and preserved by the Debtor and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, as of the Effective Date based on the entry of the Confirmation Order.

8.03.    Assertion of Estate Defenses. The Reorganized Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Defenses for the benefit of the creditors of the Estate of the Reorganized Debtor.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

9.01.    Claims Listed in Schedules as Disputed. Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent, or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective

Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

9.02.    <u>Responsibility for Objecting to Claims and Settlement of Claims</u>. The Reorganized Debtor shall have exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

(a)    From and after the Effective Date, the Reorganized Debtor have the sole and exclusive right to file, settle, or litigate to Final Order any Objections to any Claims; and

(b)    From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

9.03.    <u>Objection Deadline</u>. All Objections to Claims shall be served and filed by the Objection Deadline; *provided, however*, that the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim. Any such motion may be granted without notice or a hearing. In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor. Nothing contained herein shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

9.04.    <u>Response to Claim Objection</u>. If the Reorganized Debtor filed an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing. The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Reorganized Debtor shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

9.05.    <u>Distributions on Account of Contested Claims</u>. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon

the date such Claim, or a portion thereof, is Allowed, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

9.06.   <u>No Waiver of Right to Object</u>. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release, or impair the Reorganized Debtor's right to object to any Claim.

9.07.   <u>Offsets and Defenses</u>. The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceedings.

9.08.   <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Debtor or the Reorganized Debtor from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE X.
## EXECUTORY CONTRACTS

10.01.   <u>Assumption and Rejection of Executory Contracts</u>. This Plan shall constitute a motion to assume Executory Contracts listed on **Exhibit 2** hereto on the Effective Date, except as otherwise expressly set forth in this Plan.  Any Executory Contract not listed on **Exhibit 2** hereto shall be deemed rejected as of the Effective Date unless such Executory Contract was previously rejected by operation of law or pursuant to an Order of the Bankruptcy Court in which case such Executory Contract shall be deemed rejected effective as of the date specified in any prior order or as provided by law. **Exhibit 2** may be supplemented or modified through a document filed as a Plan Documents.

10.02.   <u>Cure Payments</u>. Other than Painted Tree Kingwood, LLC ("<u>Painted Tree</u>") and CareATC, both Tenants of the Debtor, the Debtor, or the Reorganized Debtor, asserts that it does not owe any Cure Claims for any other Executory Contract assumed in the Plan. The proposed Cure Claim of Painted Tree is treated as a Class 7 Claim as provided in this Plan.  The proposed Cure Claim of CareATC is treated as a Class 6 Claim as provided in this Plan.  With respect to any other counterparty to an Executory Contract assumed by the Reorganized Debtor who disagrees with the proposed Cure Claims, or proposed treatment

thereof, as set for on Exhibit 2 must assert such what it believes should be its Cure Claim by a written demand for payment thereof filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date and serve on the Reorganized Debtor as provided herein.  Any dispute as to the existence or amount of any such Cure Claim shall be determined by the Bankruptcy Court as a contested matter pursuant to Bankruptcy Rule 9014 as a "core" matter.  In the event a Final Order of the Bankruptcy Court provides that a Cure Claim exists with respect to an Executory Contract to be assumed, unless the treatment of such holder's Cure Claim is otherwise provided for under the Plan, the payment of such Cure Claim will be made pursuant to terms as agreed to between the Reorganized Debtor and the holder of such Cure Claim.  Notwithstanding the foregoing, the Reorganized Debtor will comply with all as may be required by section 365(b)(1) with respect to the assumption of Executory Contracts.

10.03.  <u>Bar to Rejection Claims</u>. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel by the earlier of thirty (30) days after the Effective Date, or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

10.04.  <u>Rejection Claims</u>. Any Rejection Claim not barred by section 10.03 of the Plan, and not arising as a result of the rejection of an unexpired real property lease, and to the extent Allowed, shall be treated as a Class 6 General Unsecured Claim subject to the provisions of section 502(g) of the Bankruptcy Code. Any Rejection Claim by a lessor of real property based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, to the extent Allowed, shall be treated as a General Unsecured Claim and limited and subject to sections 502(b)(6), and 502(g) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtor or the Reorganized Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

10.05.  <u>Reservation of Rights</u>. Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or that the Debtor or the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

**ARTICLE XI.**
**CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN**

11.01.  <u>Conditions to Effectiveness of the Plan</u>. The Plan shall not become effective until the following conditions shall have been satisfied through the occurrence, waiver, or performance thereof, any of which conditions may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in both form and substance acceptable to the Debtor; (b) the necessary Plan Documents have been filed or executed.

11.02.  <u>Notice of the Effective Date</u>. On or as soon as reasonably practical after the occurrence of the Effective Date, the Reorganized Debtor shall cause a notice of the Effective Date to be filed with the Bankruptcy Court and served on all Creditors and parties-in-interest.

11.03.  <u>Revocation of Plan</u>. The Debtor may revoke and withdraw the Plan at any time before the Effective Date. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other Person, or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**ARTICLE XII.**
**EFFECT OF THE PLAN ON CLAIMS AND INTERESTS**

12.01.  <u>Compromise and Settlement</u>

(a)      Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtor or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtor, the Estate, Creditors, and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtor, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtor and its affiliates, successors, assigns, the Reorganized Debtor, the Reorganized Debtor's Assets, the Estate, or the Business Assets, any event, occurrence, condition, thing, or other or further Claims or causes of action based

upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

(b)     It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtor and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control, and such Prior Settlement shall be enforceable according to its terms.

12.02.  Discharge.  The terms, covenants, and consideration under the Plan shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor, and the Assets arising before the Effective Date.  Except as otherwise expressly provided herein, upon the Effective Date, the Debtor and the Reorganized Debtor, and their successors in interests and assigns, shall be deemed discharged and released pursuant to section 1141(d)(1)(A) from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i), whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501; (b) a Claim based upon such debt is Allowed under section 502; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c).  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor, and their successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan.

**12.03.  Plan Injunction.  This section is referred to as the "Plan Injunction". Except as otherwise expressly provided herein, as of the Effective Date, all holders of Claims against, or Interest in, the Debtor, the Estate, or any of the Assets, that arose prior to the Effective Date are hereby permanently enjoined and prohibited from the following: (a) the commencing or continuation in any manner, directly or indirectly, of any action, case, lawsuit or other proceeding of any type or nature against the Debtor, Reorganized Debtor, Assets, or the Estate, with respect to any such Claim or Interest arising or accruing before the Effective Date, including without limitation the entry or enforcement of any judgment, or any other act for the collection, either directly or indirectly, any Claim or Interest against the Estate, the Debtor, the Reorganized Debtor, or the Assets; (b) the creation, perfection, or enforcement of any Lien, right, or burden, either directly or indirectly, against the Assets, the Debtor, or the Reorganized Debtor with respect to any such Claim or Interest arising or accruing before the Effective Date, or (c) taking any action in relation to the Debtor, the Estate, the Reorganized Debtor, or the Assets, either directly or indirectly, which violates or does not conform or comply with the provisions of this Plan or Confirmation Order applicable to such Claim or Interest.  The Plan Injunction shall also be incorporated into the Confirmation Order.**

12.04.  <u>Setoffs</u>. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims, and Estate Defenses of any nature that the Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims, and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims, and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, Estate Claim, or right of the Debtor without the consent of the Debtor or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

12.05.  <u>Recoupment</u>. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, Estate Claim, or account receivable of the Debtor or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtor or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment; and (c) the Debtor or the Reorganized Debtor has provided a written response to such Claim or Interest holder, stating unequivocally that the Debtor or the Reorganized Debtor consents to the requested recoupment. The Debtor and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtor or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

12.06.  <u>Turnover</u>. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

12.07.  <u>Automatic Stay</u>. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor, the Estate, and all Assets.

# ARTICLE XIII.
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

13.01.  <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)     To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections and disputes thereto;

(c)     To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset or recoupment; and (iv) determinations of Objections to Contested Claims;

(f)     To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims and Allowed Interests as provided herein;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce the discharge granted to the Debtor pursuant to section 1141 and the Plan Injunction against any Person;

(k)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(l)     To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan;

(m)    To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)     To enter a final decree closing the Chapter 11 Case; and

(p)     To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Reorganized Debtor.

13.02.  <u>Abstention and Other Courts</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Case, this Article of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

13.03.  <u>Non-Material Modifications</u>. The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Reorganized Debtor may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

13.04.  <u>Material Modifications</u>. Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any

time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

14.01.  Severability. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the re-solicitation of any acceptance or rejection of the Plan.

14.02.  Oral Agreements; Modification of Plan; Oral Representations or Inducements. The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted, or varied by any oral statement, agreement, warranty, or representation. Neither the Debtor, any representative of the Estate, nor their attorneys have made any representation, warranty, promise, or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

14.03.  Waiver. The Reorganized Debtor shall not be deemed to have waived any right, power, or privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power, or privilege.

14.04.  Notice. Any notice or communication required or permitted by the Plan shall be given, made, or sent as follows:

(a)     If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)     If to the Reorganized Debtor, notice shall be sent to the following address:

Jeff P. Prostok
Emily S. Chou
Dylan T.F. Ross
**FORSHEY PROSTOK LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@fosheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

(c)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

14.05.  <u>Compliance with All Applicable Laws</u>. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; *provided, however*, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Reorganized Debtor.

14.06.  <u>Duties to Creditors; Exculpation</u>. Neither the Debtor nor any agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtor, including but not limited to Estate Professionals (collectively, the "<u>Exculpated Parties</u>"), shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Chapter 11 Case, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date. All such Exculpated Parties shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following:  (x) the Chapter 11 Case, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of the Plan after the Effective Date,

except for claims and causes of action arising out of such Exculpated Party's gross negligence or willful misconduct.

14.07.  <u>Binding Effect</u>. The Plan shall be binding upon, and shall inure to the benefit of, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

14.08.  <u>Governing Law, Interpretation</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

14.09.  <u>Payment of U.S. Trustee Fees and Reporting</u>. All accrued U.S. Trustee Fees shall be paid by the Reorganized Debtor as soon as practicable after the Effective Date. The Reorganized Debtor shall continue to pay all U.S. Trustee Fees as they accrue and become due and payable until a final decree is entered and the Chapter 11 Case is closed. After the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee a quarterly financial report for each quarter, or portion thereof, that the Chapter 11 Case remains open.

14.10.  <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.11.  <u>Computation of Time</u>. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

14.12.  <u>Elections by the Reorganized Debtor.</u> Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor, or Person.

14.13.  <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in the Reorganized Debtor shall be deemed to be released, terminated, and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

14.14.  <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

14.15.   <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

14.16.   <u>Notice of Entry of Confirmation Order</u>. Promptly after entry of the Confirmation Order, the Reorganized Debtor, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

*[Remainder of page intentionally left blank]*

Dated:   May 8, 2023

Respectfully submitted,

CHESTNUT RIDGE ASSOCIATES LLC

By:

Andrew Schreer
Manager and Managing Member

Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@forsheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

**ATTORNEYS FOR THE
DEBTOR AND DEBTOR-IN-POSSESSION**

L:\JPROSTOK\CHESTNUT RIDGE ASSOCIATES, LLC #6374\DS & PLAN\FOR FILING MAY 8\PLAN 2023 (MAY 8).DOCX

# EXHIBIT 1

# ESTATE CLAIMS &
# ESTATE DEFENSES

Exhibit 1 - CHAPTER 11 PLAN OF REORGANIZATION                                        p. 1

**PRESERVATION OF ESTATE CLAIMS, ESTATE DEFENSES**

All claims and causes of action assertable by Chestnut Ridge Associates LLC arising under chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

All claims and causes of action against pre-petition professionals, including brokers, relating in any way to professional services provided to Chestnut Ridge Associates LLC.

Claims and causes of action arising under any contract or lease to which Chestnut Ridge Associates LLC was/is a party.

Claims for tortious inference with any contract to which Chestnut Ridge Associates LLC was/is a party.

All rights, claims, and/or defenses of Chestnut Ridge Associates LLC under the Tenant Leases.

All fraud, misrepresentation claims of Chestnut Ridge Associates LLC.

Claims and causes of action against individuals or entities responsible for Chestnut Ridge Associates LLC's bankruptcy and causing damages to Chestnut Ridge Associates LLC.

Claims and causes of action of Chestnut Ridge Associates LLC against the Prepetition Releasee(s) (as such term is defined in the *Final Order Authorizing the Debtor's Use of Cash Collateral; and Granting Adequate Protection and Related Relief* [Dkt. No. 79]) that a court of competent jurisdiction determines pursuant to a final, non-appealable order, results primarily from the actual fraud, gross negligence, or willful misconduct of such Prepetition Releasee(s).

Exhibit 1 - CHAPTER 11 PLAN OF REORGANIZATION                                                    p. 2

# EXHIBIT 2

# EXECUTORY CONTRACTS
# TO BE ASSUMED

Exhibit 2 - CHAPTER 11 PLAN OF REORGANIZATION                                    p. 1

| Name of Counterparty | Description of Lease/Contract | Proposed Cure Claim |
|---|---|---|
| Aldi | Tenant Lease for Unit 1387 at The Shoppes at Kingsgate<br><br>1387 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Binh's Tailor | Tenant Lease for Unit 1117 at The Shoppes at Kingsgate<br><br>1117 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| CareATC | Tenant Lease for Unit 1331 at The Shoppes at Kingsgate<br><br>1331 Kingwood Dr. Kingwood, TX 77339 | $21,500.00<br><br>The Debtor proposes to treat the Cure Claim of CareATC as a Class 6 Claim as provided in the Plan. |
| Cell Doc | Tenant Lease for Unit 1113 at The Shoppes at Kingsgate<br><br>1113 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Cilantro's | Tenant Lease for Unit 1377 at The Shoppes at Kingsgate<br><br>1377 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Dollar Tree | Tenant Lease for Unit 1385 at The Shoppes at Kingsgate<br><br>1385 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Donald's Donuts | Tenant Lease for Unit 1381 at The Shoppes at Kingsgate<br><br>1381 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 - CHAPTER 11 PLAN OF REORGANIZATION                                                    p. 2

| | | |
|---|---|---|
| Essential Skin Care | Tenant Lease for Unit 1259 at The Shoppes at Kingsgate<br><br>1259 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Fit in 42 | Tenant Lease for Unit 1267 at The Shoppes at Kingsgate<br><br>1267 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Fur Babies | Tenant Lease for Unit 1303 at The Shoppes at Kingsgate<br><br>1303 Kingwood Dr. Kingwood, TX 77339 s | $0.00 |
| Hearing Aid Express, Inc | Tenant Lease for Unit 1247 at The Shoppes at Kingsgate<br><br>1247 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Jason's Deli | Tenant Lease for Unit 1275 at The Shoppes at Kingsgate<br><br>1275 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Liberty Tax | Tenant Lease for Unit 1309 at The Shoppes at Kingsgate<br><br>1309 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Mencius Gourmet Hunan | Tenant Lease for Unit 1379 at The Shoppes at Kingsgate<br><br>1379 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Mr. Gattis Pizza | Tenant Lease for Unit 1345 at The Shoppes at Kingsgate<br><br>1345 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 - CHAPTER 11 PLAN OF REORGANIZATION                                        p. 3

| | | |
|---|---|---|
| On the Park | Tenant Lease for Unit 1271 at The Shoppes at Kingsgate<br><br>1271 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Painted Tree Kingwood, LLC | Tenant Lease for Unit 1153 at The Shoppes at Kingsgate<br><br>1153 Kingwood Dr. Kingwood, TX 77339 | $ [TBD]<br><br>The Debtor proposes to treat the Cure Claim of Painted Tree as a Class 7 Claim as provided in the Plan. |
| Schlotzsky's | Tenant Lease for Unit 1263 at The Shoppes at Kingsgate<br><br>1263 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| SPI, LLC | Property Management Agreement for Management of The Shoppes and Kingsgate<br><br>PO Box 130564 Spring TX, 77478 | $0.00 |
| State Farm Agent | Tenant Lease for Unit 1329 at The Shoppes at Kingsgate<br><br>1329 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Summer Energy | Service Agreement<br><br>PO Box 660938 Dallas, TX 75266 | $0.00 |
| The Mint National Bank | Tenant Lease for Unit 1213 at The Shoppes at Kingsgate<br><br>1213 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| The Mint National Bank | Tenant Lease for Unit 1215 at The Shoppes at Kingsgate<br><br>1215 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 - CHAPTER 11 PLAN OF REORGANIZATION                    p. 4

| | | |
|---|---|---|
| The Mint National Bank | Tenant Lease for Unit 1223 at The Shoppes at Kingsgate<br><br>1223 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| The Mint National Bank | Tenant Lease for Unit 1231 at The Shoppes at Kingsgate<br><br>1231 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| The Mint National Bank | Tenant Lease for Unit 1235 at The Shoppes at Kingsgate<br><br>1235 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Thrive Nutrition | Tenant Lease for Unit 1327 at The Shoppes at Kingsgate<br><br>1327 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Tiger-Rock Martial Arts | Tenant Lease for Unit 1313 at The Shoppes at Kingsgate<br><br>1313 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Tina Nails | Tenant Lease for Unit 1245 at The Shoppes at Kingsgate<br><br>1245 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Trademark Kitchens & Baths | Tenant Lease for Unit 1133 at The Shoppes at Kingsgate<br><br>1133 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Tuesday Morning | Tenant Lease for Unit 1375 at The Shoppes at Kingsgate<br><br>1375 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 - CHAPTER 11 PLAN OF REORGANIZATION                                        p. 5

| | | |
|---|---|---|
| Waste Management | Service Agreement<br>9590 Clay Road Houston, TX 77080 | $0.00 |
| Wells Fargo Bank | Tenant Lease for Unit 1319 at The Shoppes at Kingsgate<br><br>1319 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Wells Fargo Bank - ATM | ATM Lease at The Shoppes at Kingsgate<br><br>1319 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 - CHAPTER 11 PLAN OF REORGANIZATION                                                                p. 6

# EXHIBIT B

# FINANCIAL FORECAST

**Chestnut Ridge Associates, LLC**
**18 month cash flow projection**
*Amounts in 000s*

| | Month 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Period Year End Date: | Jul-2023 | Aug-2023 | Sep-2023 | Oct-2023 | Nov-2023 | Dec-2023 | Jan-2024 | Feb-2024 | Mar-2024 | Apr-2024 | May-2024 | Jun-2024 | Jul-2024 | Aug-2024 | Sep-2024 | Oct-2024 | Nov-2024 | Dec-2024 | |
| **Gross Income** | 244.7 | 244.7 | 244.7 | 244.7 | 244.7 | 244.7 | 244.7 | 244.7 | 244.7 | 244.7 | 244.7 | 244.7 | 256.3 | 256.3 | 256.3 | 256.3 | 256.3 | 256.3 | 4,474.3 |
| **Operating Expenses** | | | | | | | | | | | | | | | | | | | |
| Property Taxes | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (44.9) | 0.0 | 0.0 | (43.2) | 0.0 | 0.0 | (42.4) | 0.0 | 0.0 | (130.5) |
| Insurance | (11.6) | (11.6) | (11.6) | (11.6) | (11.6) | (11.6) | (11.6) | (11.6) | (11.6) | (11.6) | (11.6) | (11.6) | (12.0) | (12.0) | (12.0) | (12.0) | (12.0) | (12.0) | (211.2) |
| Management Fees | (7.3) | (7.3) | (7.3) | (7.3) | (7.3) | (7.3) | (7.3) | (7.3) | (7.3) | (7.3) | (7.3) | (7.3) | (7.7) | (7.7) | (7.7) | (7.7) | (7.7) | (7.7) | (134.2) |
| Repairs and Maintenance | (5.6) | (5.6) | (5.6) | (5.6) | (5.6) | (5.6) | (5.6) | (5.6) | (5.6) | (5.6) | (5.6) | (5.6) | (5.8) | (5.8) | (5.8) | (5.8) | (5.8) | (5.8) | (101.9) |
| Utilities | (5.2) | (5.2) | (5.2) | (5.2) | (5.2) | (5.2) | (5.2) | (5.2) | (5.2) | (5.2) | (5.2) | (5.2) | (5.3) | (5.3) | (5.3) | (5.3) | (5.3) | (5.3) | (94.1) |
| Contract Services | (2.2) | (2.2) | (2.2) | (2.2) | (2.2) | (2.2) | (2.2) | (2.2) | (2.2) | (2.2) | (2.2) | (2.2) | (2.3) | (2.3) | (2.3) | (2.3) | (2.3) | (2.3) | (40.8) |
| Taxes | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (1.3) | (23.5) |
| Community Association fees | (1.1) | (1.1) | (1.1) | (1.1) | (1.1) | (1.1) | (1.1) | (1.1) | (1.1) | (1.1) | (1.1) | (1.1) | (1.2) | (1.2) | (1.2) | (1.2) | (1.2) | (1.2) | (20.4) |
| **Total Operating Expenses** | (34.4) | (34.4) | (34.4) | (34.4) | (34.4) | (34.4) | (34.4) | (34.4) | (34.4) | (79.3) | (34.4) | (34.4) | (78.8) | (35.6) | (35.6) | (78.0) | (35.6) | (35.6) | (756.7) |
| **Net Operating Income (NOI)** | 210.3 | 210.3 | 210.3 | 210.3 | 210.3 | 210.3 | 210.3 | 210.3 | 210.3 | 165.4 | 210.3 | 210.3 | 177.4 | 220.7 | 220.7 | 178.3 | 220.7 | 220.7 | 3,717.6 |
| **Leasing and Capital Costs** | | | | | | | | | | | | | | | | | | | |
| Tenant Improvements | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (0.8) | (10.2) | (10.2) | (10.2) | (10.2) | (10.2) | (10.2) | (70.5) |
| Leasing Commissions | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) | (0.7) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | (4.5) | (35.1) |
| Capital Reserve | (2.7) | (2.7) | (2.7) | (2.7) | (2.7) | (2.7) | (2.7) | (2.7) | (2.7) | (2.7) | (2.7) | (2.7) | (2.8) | (2.8) | (2.8) | (2.8) | (2.8) | (2.8) | (49.0) |
| **Total Leasing & Capital Costs** | (4.1) | (4.1) | (4.1) | (4.1) | (4.1) | (4.1) | (4.1) | (4.1) | (4.1) | (4.1) | (4.1) | (4.1) | (17.5) | (17.5) | (17.5) | (17.5) | (17.5) | (17.5) | (154.7) |
| **Cash Flow Before Adjustments and Debt** | 206.2 | 206.2 | 206.2 | 206.2 | 206.2 | 206.2 | 206.2 | 206.2 | 206.2 | 161.3 | 206.2 | 206.2 | 159.9 | 203.2 | 203.2 | 160.8 | 203.2 | 203.2 | 3,562.9 |
| **Tenant Rent Adjustments** | | | | | | | | | | | | | | | | | | | |
| Painted Tree improvement credit | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (48.5) | (872.5) |
| CareATC improvement credit | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| The Mint National Bank credit | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (12.6) | (12.6) | (12.6) | (12.6) | (12.6) | (12.6) | (12.6) | (12.6) | (12.6) | (12.6) | (12.6) | (12.6) | (150.7) |
| Tuesday Morning replacement | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Cash Flow After Adjustments** | 157.7 | 157.7 | 157.7 | 157.7 | 157.7 | 157.7 | 145.2 | 145.2 | 145.2 | 100.3 | 145.2 | 145.2 | 98.9 | 142.1 | 142.1 | 99.7 | 142.1 | 142.1 | 2,539.7 |
| **Debt** | | | | | | | | | | | | | | | | | | | |
| Interest Expense (Kingsgate) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (96.1) | (1,729.5) |
| Interest Expense (NAI Secured Claim) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (2.2) |
| Prepayment Penalty | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| Unsecured Creditors + DeSalvio | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 |
| **Cash Flow After Debt and Adjustments** | 61.5 | 61.5 | 61.5 | 61.5 | 61.5 | 61.5 | 49.0 | 49.0 | 49.0 | 4.1 | 49.0 | 49.0 | 2.7 | 45.9 | 45.9 | 3.5 | 45.9 | 45.9 | 808.0 |
| **Restructuring Expenses, July emergence** | | | | | | | | | | | | | | | | | | | |
| Debtor Counsel | 0.0 | (25.0) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (25.0) |
| Financial Advisor (GT) | 0.0 | (100.0) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (100.0) |
| US Trustee | 0.0 | (1.5) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (1.5) |
| Lender Counsel | (23.5) | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | (23.5) |
| **Cash Flow After Bankruptcy Costs** | 38.0 | (65.0) | 61.5 | 61.5 | 61.5 | 61.5 | 49.0 | 49.0 | 49.0 | 4.1 | 49.0 | 49.0 | 2.7 | 45.9 | 45.9 | 3.5 | 45.9 | 45.9 | 658.0 |
| **Beginning Cash** | 81.1 | 119.1 | 54.2 | 115.7 | 177.2 | 238.8 | 300.3 | 349.3 | 398.2 | 447.2 | 451.3 | 500.3 | 549.2 | 551.9 | 597.8 | 643.7 | 647.3 | 693.2 | 81.1 |
| Cash Flow | 38.0 | (65.0) | 61.5 | 61.5 | 61.5 | 61.5 | 49.0 | 49.0 | 49.0 | 4.1 | 49.0 | 49.0 | 2.7 | 45.9 | 45.9 | 3.5 | 45.9 | 45.9 | 658.0 |
| **Available Cash Balance** | 119.1 | 54.2 | 115.7 | 177.2 | 238.8 | 300.3 | 349.3 | 398.2 | 447.2 | 451.3 | 500.3 | 549.2 | 551.9 | 597.8 | 643.7 | 647.3 | 693.2 | 739.1 | 739.1 |

# EXHIBIT C

# LIQUIDATION ANALYSIS

# Liquidation Analysis

**Introduction:**

       This Liquidation Analysis is based upon certain assumptions. The Liquidation Analysis sets forth an estimated range of recovery values for each type of claim or interest upon disposition of assets pursuant to a hypothetical chapter 7 liquidation.

**Statement of Limitations:**

       The determination of the costs of, and proceeds from, the hypothetical liquidation of Chestnut Ridge Associates LLC assets in a chapter 7 case is an uncertain process involving the wide-ranging use of significant estimates and assumptions that, although reasonable, are inherently subject to significant business, economic, and competitive uncertainties, and contingencies.  Actual events and circumstances could materially affect the ultimate results realized in a chapter 7 liquidation. The Liquidation Analysis was prepared for the purpose of generating a reasonable, good faith estimate of the proceeds that would be generated if the assets were liquidated in accordance with chapter 7 of the Bankruptcy Code.  Grant Thornton relied on financial information from management of Chestnut Ridge Associates LLC for the Liquidation Analysis.  The recoveries shown in the liquidation analysis contemplate a sale of Chestnut Ridge Associates LLC's, assets on a going concern basis.

       In preparing the Liquidation Analysis, Grant Thornton relied on the balance sheet and other financial information presented by management of Chestnut Ridge Associates LLC to estimate potential recoveries and claims.

**Methodology:**

       The Liquidation Analysis has been prepared assuming the case enters a chapter 7 (the "Chapter 7 Liquidation") as of February 28, 2023[1].  Except as otherwise noted herein, the Liquidation Analysis is based upon the unaudited balance sheet of Chestnut Ridge Associates LLC as of February 28, 2023, and those values, in total, are assumed to be representative of Chestnut Ridge Associates LLC approximate assets and liabilities as of the Chapter 7 Date.  It is assumed the Bankruptcy Court would appoint a chapter 7 trustee (the "Chapter 7 Trustee") who

---

[1] Secured lender claims are estimated as of February 28, 2023

would liquidate Chestnut Ridge Associates LLC. estates and distribute the cash proceeds, net of liquidation-related costs, to creditors in accordance with the priorities described in the Bankruptcy Code and any other applicable law.

Recoveries in a liquidation are assumed to be driven by, among other things: (a) the accelerated time frame in which the assets are marketed and sold; (b) any negative customer and vendor reaction; (c) the loss of key personnel and (d) the general forced nature of a sale.

**Global Notes and Assumptions:**

The Liquidation Analysis should be read with the following notes and assumptions:

1. The Liquidation Analysis assumes that Chestnut Ridge Associates LLC would be liquidated in a Chapter 7 proceeding.  Chestnut Ridge Associates LLC is either borrower or guarantor on almost $16.4 million face value of funded debt. It is assumed that distributions would be made in accordance with section 726 of the Bankruptcy Code.

2. Dependence on unaudited financial statements.  Proceeds available for recovery are based upon the unaudited financial statements and balance sheets of Chestnut Ridge Associates LLC as of February 28, 2023, unless otherwise noted.

3. Chapter 7 liquidation costs and length of the liquidation process.  The Liquidation Analysis assumes that the Chapter 7 Liquidation would take 1-3 months to pursue sales of all assets, monetize any other assets on the balance sheet, and otherwise administer and close the estates. In an actual liquidation, the wind down process and time periods could be longer, thereby likely reducing creditor recoveries further.  For example, extending the duration of the process to liquidate and allow Claims, including priority, contingent, litigation, rejection, and other Claims could substantially delay the timing and reduce the amounts of the distributions of asset proceeds to creditors due to, among other things, increased administrative costs.  Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if Chestnut Ridge Associates LLC were, in fact, to undergo such liquidation.

4. Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Chapter 7 Trustee, including expenses associated with selling Chestnut Ridge Associates LLC assets, would be entitled to payment in full prior to any distributions to

Administrative Claims and Other Priority Claims.  The estimates used in the Liquidation Analysis for these expenses include estimates for operational expenses, sales and broker commission and certain legal, accounting, and other professionals, as well as an assumed 3% fee payable to a Chapter 7 Trustee based on the amount of liquidated assets.  It is assumed that chapter 7 administrative and priority claims, and Chapter 7 Trustee fees are entitled to payment in full prior to any distribution to holders of any other claims.

5.  Distribution of Net Proceeds.  Chapter 7 administrative claim amounts, priority claim amounts, secured lender claims and other such claims that may arise in a liquidation scenario would be paid in full from the liquidation proceeds before any remaining proceeds would be made available to pay general unsecured claims.  The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

6.  Additional Claims.  A liquidation is likely to trigger certain administrative and priority claims. These types of administrative and priority claims have not been accounted for in the Liquidation Analysis, but it is important to note these would need to be paid in full before any balance of liquidation proceeds would be available to pay general unsecured claims.

Examples of these kinds of claims include various potential employee claims, tax liabilities, claims related to further rejection of unexpired leases and executory contracts, new bonding or letters of credit for environmental liabilities, litigation claims, and other potential allowed claims.  These additional claims could be significant; some may be administrative expenses; others may be entitled to priority in payment over general unsecured claims.  In addition, the Liquidation Analysis does include potential adequate protection claims that could be asserted by secured creditors but are only estimated at this time. Such claims could be more significant and are treated as general unsecured claims.

7.  Preference or fraudulent transfers.  No recovery or related litigation costs have been attributed to any potential avoidance actions under the Bankruptcy Code, including potential preference or fraudulent transfer actions due to, among other issues, the costs of such litigation, the uncertainty of the outcome, and anticipated disputes regarding these matters.

8.  Litigation Costs.  Costs for potential litigation have not been included in the Liquidation Analysis.

The following Liquidation Analysis should be reviewed with the accompanying notes.

**Chestnut Ridge Associates LLC**
Liquidation Analysis

*($ in thousands)*

| | | | | Chestnut Ridge Associates LLC | | | |
| | | | | Low | | High | |
| | Notes | Est. Net Book Value as of 2/28/2023 | | $ | % | $ | % |
|---|---|---|---|---|---|---|---|
| **Assets:** | | | | | | | |
| Cash | A | $ 263 | $ | 263 | *100%* | $ 263 | *100%* |
| Accounts Receivable | B | 13 | $ | 11 | *90%* | $ 13 | *100%* |
| Other Current Assets | C | | | - | *n/a* | - | *n/a* |
| Land and buildings | D | 31,100 | | 18,000 | *58%* | 24,165 | *78%* |
| Other Property & Equipment | E | - | | - | *n/a* | - | *n/a* |
| Other Non-Current Assets | F | - | | - | *n/a* | - | *n/a* |
| **Gross Liquidation Proceeds** | | $ 31,375 | $ | 18,274 | *58%* | $ 24,440 | *78%* |
| | | | | | | | |
| **Liquidation Costs:** | | | | | | | |
| Net Wind-Down Expenses of Trustee | G | | | 187 | | 62 | |
| Trustee Fees | H | | | (540) | | (725) | |
| Trustee Legal & Financial Advisors | I | | | (1,621) | | (1,209) | |
| **Subtotal** | | | $ | (1,975) | | $ (1,872) | |
| **Net Liquidation Proceeds Available for Distribution:** | | | $ | 16,299 | | $ 22,568 | |

| | | | Chestnut Ridge Associates LLC | | | |
| | | | Liquidation Waterfall | | | |
| | | | Low Recovery Estimate | | High Recovery Estimate | |
| | Notes | Claims Estimate[1] | $ | % | $ | % |
|---|---|---|---|---|---|---|
| Administrative Claims | J | $ 106 | $ 106 | *100%* | $ 106 | *100%* |
| Secured Claims | | | | | | |
| Kingsgate | K | 16,479 | 16,193 | *98%* | 16,479 | *100%* |
| Total Secured Claims | | $ 16,585 | $ 16,299 | *98%* | $ 16,585 | *100%* |
| Unsecured Claims | | | | | | |
| Tax Claim and Other Priority Claims | L | - | - | *n/a* | - | *n/a* |
| Tenant Improvements | M | 1,237 | - | *0%* | 1,237 | *100%* |
| General Unsecured Claims | N | 1,324 | - | *0%* | 1,324 | *100%* |
| Total Unsecured Claims | | $ 2,561 | $ - | *0%* | $ 2,561 | *100%* |
| Equity Interests: | | | | | | |
| Existing Equity Interests | O | 12,787 | - | *0%* | 3,422 | *27%* |
| Total Equity Interests | | 12,787 | - | | 3,422 | |
| Total Estimated Claims/Interests and Recoveries | | 31,933 | 16,299 | | 22,568 | |

[1] Claims as of 2/5/23. Includes Estate of Joe DaSalvo claim

**Specific Notes to the Liquidation Analysis:**

*Gross Liquidation Proceeds*

**A.    Cash**

The liquidation proceeds of cash and cash equivalents is estimated to be 100%

**B.    Accounts Receivable**

There is approximately $12.5 thousand due from tenant Tuesday Morning.

**C.    Other Current Assets**

None are listed

**D.    Land and construction**

The valuation of the Project is based on a direct capitalization rate of 7.45% for the low case and 10% for a high case.  Projected pro forma net operating income is used and the sale value is discounted by 10% based on the forced nature of the situation.

**E.    Other Property & Equipment**

None are listed

**F.    Other Non-Current Assets**

None are listed

*Liquidation Costs –*

**G.    Net Wind-Down Expenses of Trustee**

The Liquidation Analysis assumes the chapter 7 liquidation process will take 1-3 months to complete.  Full year 2022 costs were used to determine a monthly average net operating income amount. General and administrative costs would still be necessary to orderly wind-down the estates. For purpose of recoveries, the estimated amounts for the high end of the range were applied to the low recovery amounts and the estimated

amounts for the low end of the range were applied to the high recovery amounts. This was done to demonstrate best- and worst-case scenarios.

**H.    Trustee Fees**

Chapter 7 Trustee would be limited to fee guidelines in section 326(a) of the Bankruptcy Code. The estimated Chapter 7 Trustee fees would be 3% of the gross proceeds from the liquidation (excluding cash).

**I.    Trustee Legal & Financial Advisors**

Compensation for the Chapter 7 Trustee's professionals (counsel and other legal, financial, and professional services) during the Chapter 7 Liquidation is estimated to be between 5% and 9% of the total proceeds from the liquidation (excluding cash) due to the nature of the asset and account for broker commissions. For purpose of recoveries, the estimated costs for the high end of the range were applied to the low recovery amounts and the estimated costs for the low end of the range were applied to the high recovery amounts. This was done to demonstrate best- and worst-case scenarios.

*Claims –*

**J.    Administrative Claims**

Amounts represent post-petition accounts payable and carve-out amounts for unpaid professional fees and U.S. Trustee.

**K.    Kingsgate Claim**

Kingsgate claims consist of the estimated balance of approximately $16.5 million outstanding under the Promissory Note. Any pre-petition unpaid default interest plus post-petition default interest has not been determined.  For the purposes of the Liquidation Analysis, and from discussions with Chestnut Ridge Associates LLC management and counsel, Kingsgate claims are treated as secured by substantially all the assets of Chestnut Ridge Associates LLC.  Holders of these claims will receive cash in controlled accounts, and the proceeds from the sale of their collateral, which are to be distributed to holders of lender claims after any distribution is made to holders of

administrative claims but no other secured or unsecured priority claims. The Liquidation Analysis projects an estimated recovery of 98% to 100% for holders of these claims.

**L.    Tax Claim and Other Priority Claims**

None are listed

**M.    Tenant Improvement**

Amount is treated as a general unsecured claim but is listed separately due to the magnitude for Painted Bear and CareATC.

**N.    General Unsecured Claims**

For the purposes of the Liquidation Analysis, all liabilities that are or that Chestnut Ridge Associates LLC would expect to be, unsecured liabilities are classified as general unsecured.  General unsecured claims would include estimates for pre-petition ordinary course accounts payable, contractor balances, litigation, Joseph DeSalvo estate, broker commissions and contract rejections.  It is assumed that holders of secured claims would assert claims for any deficiency in their recoveries. The highest estimated deficiency claim was used to estimate the general unsecured claims pool. The Liquidation Analysis projects an estimated recovery of 0% to 100% for holders of general unsecured claims.

**P.    Existing Equity Interests**

The Liquidation Analysis shows existing equity interests receiving a distribution of zero in the low case and approximately 27% or $3.4 million in the high case scenario.