**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 11 |
| CHESTNUT RIDGE ASSOCIATES LLC, | ) |
| | ) CASE NO. 23-90069 (DRJ) |
| DEBTOR. | ) |
| | ) |

**AMENDED CHAPTER 11 PLAN OF REORGANIZATION
FOR CHESTNUT RIDGE ASSOCIATES LLC**

Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@fosheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

**ATTORNEYS FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION**

DATED: May 21 , 2023

# ARTICLE I.
## DEFINITIONS

A.      <u>Defined Terms</u>. In addition to such other terms as are defined in other sections of the Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.01.   "<u>Administrative Bar Date</u>" means the deadline to file a Claim for Allowance as an Administrative Expense set forth in section 3.01(a) of the Plan.

1.02.   "<u>Administrative Expense</u>" means any cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

1.03.   "<u>Affiliate</u>" has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.04.   "<u>Allowed</u>," when used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no Objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; *provided, however*, that if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "<u>Allowed</u>," when used with respect to an Administrative Expense, means an Administrative Expense, other than uncontested Ordinary Course Administrative Expense, approved by application to the Bankruptcy Court.

1.05.   "<u>Assets</u>" includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor or the Estate as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtor or the Estate through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code.  Without limiting the generality of the foregoing, this shall include all of the following: Estate Claims, Estate Defenses, and Executory Contracts.

1.06.   "<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

1.07.   "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other court having jurisdiction over all or any part of the Chapter 11 Case.

1.08.   "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Case, including applicable local rules of the Bankruptcy Court.

1.09.   "<u>Bar Date</u>" means the deadline established by the Bankruptcy Court for filing a proof of Claim in the Chapter 11 Case as applicable to a particular Claimant.

1.10.   "<u>Business Day</u>" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

1.11.   "<u>Cash</u>" means legal tender of the United States of America, cash equivalents and other readily marketable securities or instruments, including, but not limited to, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks or commercial paper.

1.12.   "<u>Chapter 11 Case</u>" refers to the above-captioned chapter 11 bankruptcy case of Chestnut Ridge Associates LLC, case number 23-90069 (DRJ), pending in the Bankruptcy Court.

1.13.   "<u>Claim</u>" means (a) a right to payment against the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.14.   "<u>Claimant</u>" means the holder of a Claim.

1.15.   "<u>Class</u>" means a class of Claims or Interests as described in the Plan.

1.16.   "<u>Closing</u>" means the closing of (1) a sale of the Property, or (2) a refinancing transaction that generates sufficient funds to make the Distributions on Allowed Claims as provided in this Plan.

1.17.   "<u>Closing Date</u>" means the date on which the Closing occurs.

1.18.   "<u>Collateral</u>" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.19.   "<u>Confirmation Date</u>" means the date of entry of the Confirmation Order.

1.20.    "<u>Confirmation Hearing</u>" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as such hearing may be continued from time to time.

1.21.    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.22.    "<u>Contested</u>," when used with respect to a Claim, means a Claim (a) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (c) a proof of Claim as to which an objection has been, or may be, timely filed and the objection has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.23.    "<u>Creditor</u>" means a "creditor," as defined in section 101(10) of the Bankruptcy Code.

1.24.    "<u>Cure Claim</u>" means the payment or other performance required to cure existing default under an Executory Contract for purposes of assumption of such Executory Contract as required by section 365 of the Bankruptcy Code.

1.25.    "<u>Debtor</u>" means Chestnut Ridge Associates LLC, the debtor and debtor-in-possession in the Chapter 11 Case.

1.26.    "<u>Disallowed</u>," when used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an objection or motion to disallow has been sustained by a Final Order and such amount Disallowed shall not be entitled to any Distribution.

1.27.    "<u>Disclosure Statement</u>" means the *Amended Disclosure Statement for the Amended Chapter 11 Plan of Reorganization for Chestnut Ridge Associates LLC* dated _____filed with respect to the Plan, and conditionally approved by the Bankruptcy Court on _____, 2023, and as it may be amended, modified, or supplemented from time to time.

1.28.    "<u>Distribution</u>" means any payment or other disbursement of property to be made by the Reorganized Debtor pursuant to the Plan.

1.29.    "<u>Effective Date</u>" means the first Business Day that is at least fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the Effective Date set forth in Article XI below are satisfied.

1.30.   "<u>Estate</u>" shall refer to the bankruptcy estate of the Debtor in the Chapter 11 Case.

1.31.   "<u>Estate Claims</u>" means all claims and causes of action held by the Debtor's Estate, including, without limitation, the Estate Claims reflected in Article VIII of this Plan and those listed on the attached **Exhibit 1** to this Plan.  Exhibit 1 may be supplemented or modified through a document filed as a Plan Documents.

1.32.   "<u>Estate Defenses</u>" means all defenses, affirmative defenses, counterclaims, offsets and rights of recoupment by the Estate or Debtor against any Person, including but not limited to any Creditor.  This includes all such defenses described in Article VIII of the Plan and in **Exhibit 1** to the Plan.  Exhibit 1 may be supplemented or modified through a document filed as a Plan Documents.

1.33.   "<u>Estate Professionals</u>" means those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 363, and 1103 of the Bankruptcy Code and who are entitled to compensation or reimbursement pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

1.34.   "<u>Executory Contract</u>" means any executory contract or unexpired lease, including the Tenant Leases, to which the Debtor is a party and which is subject to section 365 of the Bankruptcy Code.

1.35.   "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.36.   "<u>General Unsecured Claim</u>" means any Claim that is not a Claim for an Administrative Expense, a Priority Claim, a Secured Claim, a Member Unsecured Note Claim, or the Painted Tree Claim.

1.37.   "<u>Governmental Unit</u>" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

1.38.   "<u>Impaired</u>," when referring to a Class of Claims or Interests, means a Class that is impaired as such term is defined in section 1124 of the Bankruptcy Code.

1.39.   "<u>Insider</u>" means a Person described in section 101(31) of the Bankruptcy Code.

1.40.   "<u>Interests</u>" means any equity interest or membership interest in the Debtor.

1.41.   "<u>Kingsgate Secured Claim</u>" means, collectively, any and all Secured Claims held or asserted by Kingsgate Partner, LLC.

1.42.   "<u>Kingsgate Secured Note</u>" means the secured promissory note to be executed and delivered by the Reorganized Debtor in treatment of the Kingsgate Secured Claim. The Kingsgate Secured Note is described more fully in section 4.03 of the Plan.

1.43.   "<u>Lien</u>" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor contemplated by section 101(37) of the Bankruptcy Code.

1.44.   "<u>Member Unsecured Note Claim</u>" means any Claim asserted by a Person who also asserts that it held or holds membership interest or equity interest in the Debtor as of the Petition Date, including any Claim asserted by the Estate of Joseph DeSalvo.

1.45.   "<u>Net Proceeds</u>" means all monetary consideration received by the Reorganized Debtor or its designee(s) for the sale of the Property *less* any reasonable and customary costs and expenses for such a transaction, including compensation that the Reorganized Debtor pays for brokerage services rendered directly in connection with such sale of the Property.

1.46.   "<u>Objection</u>" means (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

1.47.   "<u>Objection Deadline</u>" means the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

1.48.   "<u>Other Secured Claim</u>" means any Secured Claim that is not a Secured Tax Claim or the Kingsgate Secured Claim.

1.49.   "<u>Painted Tree Claim</u>" shall have the meaning set forth in section 4.07(a) of the Plan.

1.50.   "<u>Person</u>" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.51.   "<u>Petition Date</u>" means February 5, 2023.

1.52.   "<u>Plan</u>" means this *Amended Chapter 11 Plan of Reorganization of Chestnut Ridge Associates LLC* dated May __, 2023, either in its present form or as it may be altered, amended, or modified from time to time.

1.53.   "<u>Plan Documents</u>" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court.

1.54.    "Post-Closing Date Distribution Date" has the meaning set forth in section 7.02(b) of the Plan.

1.55.    "Post-Effective Date Distribution Date" has the meaning set forth in section 7.02(a) of the Plan.

1.56.    "Priority Claim" means a Claim (other than a Claim for an Administrative Expense) to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.57.    "Priority Non-Tax Claim" means any Priority Claim that is not a Priority Tax Claim.

1.58.    "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code other than a Secured Tax Claim.

1.59.    "Pro Rata Share" means, as to the holder of a specific Allowed Interest, the ratio that the amount of such holder's Allowed Interest bears to the aggregate amount of all Allowed Interests included in the particular Class in which such holder's Interest is included.

1.60.    "Property" means that certain real property of approximately 14.87 acres, located at 1113-1387 Kingwood Drive, Humble, Texas, known as The Shoppes at Kingsgate, and all improvements thereon.

1.61.    "Rejection Claim" means a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract. For all purposes in this Plan, any Rejection Claim shall be considered and treated as a General Unsecured Claim.

1.62.    "Reorganized Debtor" means the Debtor from and after the Effective Date.

1.63.    "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be subsequently amended.

1.64.    "Secured Claim" means (a) a Claim secured by a Lien against any Assets, to the extent such Lien is valid, perfected, and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Claim does not exceed the value of the Assets that secures payment of the Claim (except, if holder of such Claim makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be a Secured Claim), or (b) a Claim that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to setoff as provided in section 506(a) of the Bankruptcy Code.

1.65.   "Secured Tax Claims" means any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due.

1.66.   "Solicitation Order" means the Order of the Bankruptcy Court conditionally approving the Disclosure Statement and approving Plan solicitation procedures entered on May __, 2023 [Docket No. __].

1.67.   "Substantial Consummation" means the day on which a Creditor first receives a Distribution of any kind under the terms and provisions of the Plan.

1.68.   "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

1.69.   "Tenant" means any present (as of the Effective Date) Person who is a tenant at the Property pursuant to a lease agreement between such Person, as such tenant, and the Debtor, as landlord.

1.70.   "Tenant Lease" means a lease between the Debtor, as landlord, and any person, as tenant, at the Property, and that is in effect, and has not expired or been terminated, immediately before the Effective Date.

1.71.   "Unclaimed Property" means any cash, Distribution, or any other property of the Reorganized Debtor unclaimed for a period of one (1) year after the applicable Plan Distribution Date.

1.72.   "Unimpaired" means, when used with reference to a Class of Claims or Interests, a Class that is not impaired as such term is defined in section 1124 of the Bankruptcy Code.

1.73.   "U.S. Trustee" means the Office of the United States Trustee operating by and through the regional office(s) thereof having oversight responsibilities with respect to the Chapter 11 Case.

1.74.   "U.S. Trustee Fees" means the quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) in the Chapter 11 Case.

B.    Interpretation. Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof. The rules of construction set forth in section 102 of the Bankruptcy Code, other than section 102(5) of the Bankruptcy Code, apply to construction of the Plan. For the purposes of construction of the Plan, "or" is disjunctive.

C.     <u>Other Terms</u>. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code. Otherwise, a term used herein that is not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

D.     <u>Exhibits and Plan Documents</u>. All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. Any Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Forshey & Prostok, LLP, 777 Main Street, Suite 1550, Fort Worth, Texas 76102, Attention: Kristina Hartogh; fax number (817) 877-4151; email: khartogh@forsheyprostok.com.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01.   The following is a designation of the Classes of Claims and Interests under the Plan. Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code, and the treatment of such Claims is set forth in Article III of the Plan. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class. A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim in that Class.

> Class 1 – Priority Non-Tax Claims
> Class 2 – Secured Tax Claims
> Class 3 – Kingsgate Secured Claim
> Class 4 – Other Secured Claims
> Class 5 – Member Unsecured Note Claims
> Class 6 – General Unsecured Claims
> Class 7 – Painted Tree Claim
> Class 8 – Interests

2.02.   <u>Impaired Classes of Claims and Interests</u>. Class 1 is Unimpaired. Classes 2, 3, 4, 5, 6, 7 and 8 are Impaired.

2.03.   <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE III.
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01.   <u>Administrative Expenses</u>

(a)      <u>Ordinary Course Administrative Claims</u>. Administrative Expenses that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business which may be paid in the ordinary course of the Debtor's business without order of the Bankruptcy Court (the "<u>Ordinary Course Administrative Claims</u>") shall be paid by the Reorganized Debtor in accordance with the terms and conditions of the particular transaction giving rise to such post-petition Claims without any further action by the holders of such Ordinary Course Administrative Claims. The remaining provisions of this section 3.01 shall not apply to the Ordinary Course Administrative Claims, except that if there is a dispute relating to any such Ordinary Course Administrative Claim, the Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article IX below relating to Contested Claims and require the holder of the Contested Ordinary Course Administrative Claim to assert such Claim through the Chapter 11 Case.

(b)      <u>Administrative Bar Date</u>. Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim of an Estate Professional, an Ordinary Course Administrative Claim, or an Administrative Expense that is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written request for payment of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the "**Administrative Bar Date**." Such written request shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. **Failure to timely and properly file and serve such request by the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred and discharged and the holder thereof shall be barred from receiving any Distribution from the Reorganized Debtor on account of such Claim for an Administrative Expense**.

(c)      <u>Allowance</u>. A Claim for an Administrative Expense for which a proper request for payment was filed and served pursuant to (a) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such request. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(d)      <u>Determination</u>. If the Reorganized Debtor asserts any Estate Defense as a defense to a Claim for Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

(e)     <u>Estate Professionals</u>. The procedures contained in subsections 3.01(b)-(d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid in accordance with subsection 3.01(f) below .

(f)     <u>Treatment</u>. Each holder of an unpaid Allowed Administrative Expense, other than an Ordinary Course Administrative Claim, shall receive from the Reorganized Debtor (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor.

3.02.   <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim shall receive (a) in one Cash payment an amount equal to the principal amount of such Allowed Priority Tax Claim, plus interest at the rate and in the manner prescribed by applicable state law from the later of the Petition Date or the first day after the last day on which such Priority Tax Claim may be paid without penalty, no later than sixty (60) days after each such Claim becomes an Allowed Claim, or (b) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Reorganized Debtor.

3.03.   <u>U.S. Trustee Fees</u>. On the Effective Date or as soon thereafter as is practicable, the Reorganized Debtor shall pay all U.S. Trustee Fees that are due and payable as of the Confirmation Date. From and after the Confirmation Date, the Reorganized Debtor shall continue to pay all U.S. Trustee Fees as they accrue until a final decree is entered and the Chapter 11 Case is closed. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee a quarterly financial report for each quarter, or portion thereof, that the Chapter 11 Case remains open.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

4.01.   <u>Class 1 – Priority Non-Tax Claims</u>

(a)     <u>Treatment</u>. Each holder of an Allowed Priority Non-Tax Claim, to the extent not previously paid, shall receive, (a) on or before the Post-Effective Date Distribution Date, one Cash payment in an amount equal to the amount of such Allowed Priority Non-Tax Claim; or (b) such other treatment as may be agreed to in writing by the holder of such Allowed Priority Non-Tax Claim and the Reorganized Debtor.

(b)     <u>Impairment</u>. Class 1 is Unimpaired. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan and, accordingly, are not entitled to vote

to accept or reject the Plan. The Debtor will not solicit the votes of Class 1 Claimants regarding the Plan.

      4.02.   <u>Class 2 – Secured Tax Claims</u>

      (a)   <u>Treatment</u>. Each holder of an Allowed Secured Tax Claim shall be paid, and treated as follows:

      (i)   A holder of an Allowed Secured Tax Claim shall be paid on account of its Allowed Secured Tax Claim the amount of such Allowed Claim, plus interest as provided herein, at the Reorganized Debtor's option: (1) in substantially equal quarterly Cash payments, with first payment due on April 1, 2024, and continuing quarterly with payment due on the first day of each quarter, with the last quarterly payment due January 1, 2028, *provided however*, if a Closing were to occur prior to the January 1, 2028, the unpaid balance of the Allowed Secured Tax Claim together with accrued and unpaid interest thereon, shall be paid on the Post-Closing Date Distribution Date; or (2) pursuant to such other treatment as may be agreed to by the Debtor (or Reorganized Debtor, as appropriate) and the holder of the Allowed Secured Tax Claim.

      (ii)   Interest on Allowed Secured Tax Claims shall accrue as follows: beginning on the date any portion of the tax underlying the Allowed Secured Tax Claim becomes delinquent under state law, and to the extent of such delinquency, interest shall accrue on the delinquent unpaid tax at the state statutory rate of 12% per annum in compliance with sections 511 and 1129 of the Bankruptcy Code.

      (iii)   The Liens securing each Allowed Secured Tax Claim shall remain in full force and effect until such Allowed Secured Tax Claim is fully treated in accordance with this Plan.

      (b)   <u>Impairment</u>. Class 2 is Impaired. Holders of Class 2 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 2 Claimants regarding the Plan.

      4.03.   <u>Class 3 – Kingsgate Secured Claim</u>

      (a)   <u>Treatment</u>. The holder of the Allowed Kingsgate Secured Claim shall receive, on or before the Post-Effective Date Distribution Date, the Kingsgate Secured Note, the form of which shall be submitted as a Plan Document. The Kingsgate Secured Note shall be in the original principal amount equal to the amount of the Allowed Kingsgate Secured Claim. The unpaid principal balance of the Kingsgate Secured Note shall bear interest at the rate of 5.838% per annum (based upon a 2 Year Treasury as of May 3, 2023, of 3.838% plus 200bps spread (2%) of risk premium). The Kingsgate Secured Note shall provide for monthly payments of accrued interest only for the term of the note. The unpaid principal balance of the Kingsgate Secured Note, together with any accrued and unpaid interest thereon, shall be fully due and payable upon the first to occur of (i) the tenth (10th) day after the Closing Date, or (ii) December 31, 2024. The Liens securing the Allowed Kingsgate Secured Claim shall remain in full force and effect in the same priority and validity

as existed on the Petition Date until the Allowed Kingsgate Secured Claim is fully treated in accordance with this Plan.

(b)     Impairment. Class 3 is Impaired. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan. The Debtor will solicit the vote of the Class 3 Claimant regarding the Plan.

4.04.   Class 4 – Other Secured Claims

(a)     Treatment. At the option of the Reorganized Debtor, each holder of an Allowed Other Secured Claim shall receive, on or before the Post-Closing Date Distribution Date,

(i)     the collateral securing such Allowed Other Secured Claim;

(ii)    Cash in the full amount of the Allowed Other Secured Claim plus any accrued and unpaid interest thereon accruing at the rate of 5.838% per annum commencing from the Effective Date of the Plan to the date Distribution is made; or

(iii)   such other treatment as may be agreed to in writing by the holder of such Allowed Other Secured Claim and the Reorganized Debtor.

(b)     Liens. The Liens securing each Allowed Other Secured Claim shall remain in full force and effect until such Allowed Other Secured Claim is fully treated in accordance with this Plan.

(c)     Impairment. Class 4 is Impaired. Holders of Class 4 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 4 Claimants regarding the Plan.

4.05.   Class 5 – Member Unsecured Note Claims

(a)     Treatment.  Each holder of an Allowed Member Unsecured Note Claim shall receive, after Classes 1 to 4 have received the full treatment in accordance with the Plan,  Cash equal to the Allowed amount of such Claim on or before the Post-Closing Date Distribution Date.

(b)     Impairment. Class 5 is Impaired. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 5 Claimants regarding the Plan.

4.06.   Class 6 – General Unsecured Claims

(a)     Treatment. Each holder of an Allowed General Unsecured Claim shall receive, after Classes 1 to 4 have received the full treatment in accordance with the Plan, Cash equal to the Allowed amount of such Claim on or before the Post-Closing Date Distribution Date.

(b)     Impairment. Class 6 is Impaired. Holders of Class 6 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 6 Claimants regarding the Plan.

4.07.   Class 7 – Painted Tree Claim

(a)     Treatment.   The Painted Tree Claim in the amount as set forth in Exhibit 2 of this Plan as the Proposed Cure Claim for Painted Tree Kingwood, LLC (the "Painted Tree Cure Amount") shall be satisfied by: (i) monthly rent credited toward the Painted Tree Cure Amount until the amount is satisfied in full, and (ii) in the event a Closing takes place prior to the satisfaction in full of the Painted Tree Cure Amount as set forth in (i) above, all remaining balance of the Painted Tree Cure Amount shall be paid, after Classes 1 to 4 have received the full treatment in accordance with the Plan, on or before the Post-Closing Date Distribution Date.

(b)     Impairment. Class 7 is Impaired. Holders of Class 7 Claims are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 7 Claimants regarding the Plan.

4.08.   Class 8 – Interests

(a)     Treatment. Each holder of an Allowed Interest in the Debtor shall retain each of their Allowed Interest from and after the Effective Date.  In the event of a sale of the Property, each holder of an Allowed Interest in the Debtor shall receive a Pro Rata Share of any Net Proceeds remaining after completion of the full treatment, in accordance with the Plan, of all Allowed Administrative Expenses, Allowed Priority Claims (Class 1), Allowed Secured Tax Claims (Class 2), the Allowed Kingsgate Secured Claim (Class 3), Allowed Other Secured Claims (Class 4), Allowed Member Unsecured Note Claims (Class 5), Allowed General Unsecured Claims (Class 6), and the Painted Tree Claim (Class 7).

(b)     Impairment. Class 8 is Impaired. Holders of Class 8 Interests are entitled to vote to accept or reject the Plan. The Debtor will solicit the votes of Class 8 Interests regarding the Plan.

## ARTICLE V.
## ACCEPTANCE OR REJECTION OF THE PLAN

5.01.   Classes Entitled to Vote. Creditors in Classes 2, 3, 4, 5, 6, and 7, and Interest holders in Class 8 are entitled to vote and shall vote separately to accept or reject the Plan. Any Unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any Unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

5.02.   Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan. A Class of

Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.

5.03.   <u>Elimination of Vacant Classes</u>.  Any Class of Claims or Interest that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

5.04.   <u>Presumed Acceptance by Non-Voting Classes</u>.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or rejected the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

5.05.   <u>Cramdown</u>. This section shall constitute the request by the Debtor, pursuant to section 1129(b) of the Bankruptcy Code, that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a)(8) of the Bankruptcy Code have not been met.

## ARTICLE VI.
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.01.   <u>Continued Existence of the Debtor</u>. The Debtor shall continue to exist after the Effective Date, with all the powers available to such legal entities, in accordance with applicable law and pursuant to its constituent documents. Upon the occurrence of the Effective Date, the Debtor shall be thereafter referred to as the Reorganized Debtor. The Reorganized Debtor shall have the rights and powers of a debtor-in-possession under section 1107 of the Bankruptcy Code, and such other rights, powers, and duties incident to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary.

6.02.   <u>Vesting of Assets</u>. As of the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all of the Assets in the Estate shall vest in the Reorganized Debtor, free and clear of all rights, title, interests, claims, liens, encumbrances, and charges, except as expressly set forth in the Plan. On and after the Effective Date, the Reorganized Debtor may administer, use, acquire, or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for all fees, disbursements, expenses, or related support services of Professionals (including fees relating to the preparation of professional fee applications) without application to, or approval of, the Bankruptcy Court.

6.03.   <u>Funds Available for Distribution</u>.  The sources of funds for making Distributions will consist of Cash from operations, and (a) sale proceeds from the sale of the Property, or (b) funds from refinancing transaction.

6.04.   <u>Actions by Debtor and the Reorganized Debtor to Implement Plan</u>. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtor and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, including without limitation, (a) all transfers of Assets pursuant to the Plan; (b) the performance of the terms of the Plan and the making of all Distributions required under the Plan; and (c) subject to the terms of the Plan, entering into any and all transactions, contracts, or arrangements permitted by applicable law, order, rule or regulation.

6.05.   <u>Management of the Reorganized Debtor</u>

(a)   From and after the Effective Date, the Plan will be administered by the Reorganized Debtor.

(b)   From and after the Effective Date, the Reorganized Debtor shall be managed in accordance with applicable law and its corporate documents.  There will be no change in the Debtor's corporate documents or management upon the Effective Date.  The Reorganized Debtor shall continue to be managed by its current management, including Andrew Schreer and David Carmel.

(c)   From and after the Effective Date, the Reorganized Debtor may, among other things, use, pledge, acquire, and/or dispose of any of the Reorganized Debtor's property free of the restrictions imposed under the Bankruptcy Code and without prior Bankruptcy Code approval, *provided* that any such use, pledge, acquisition, disposition is not inconsistent with this Plan and that the Bankruptcy Court retains jurisdiction over the Reorganized Debtor and this Plan.

(d)   The Confirmation Order shall provide the Reorganized Debtor with express authority to convey, transfer, and assign any and all property of the Estate consistent with the terms of this Plan and to take all actions necessary to effectuate same.

(e)   The Reorganized Debtor shall have sole responsibility for making Distributions under the Plan to the holders of Allowed Claims and Allowed Interests.

6.06.   <u>Payment of Fees and Expenses to Professionals of the Reorganized Debtor</u>. From and after the Effective Date, the Reorganized Debtor may, without Bankruptcy Court order, employ professional persons, as such term is used in the Bankruptcy Code, to assist the Reorganized Debtor to carry out its duties under the Plan. The professionals employed by the Reorganized Debtor shall be entitled to reimbursement of their reasonable and necessary expenses incurred in carrying out its duties under the Plan before any Distributions are required to be made on account of any Allowed Claims. The professionals employed by the Reorganized Debtor shall be compensated at their respective standard hourly rates for time spent administering the implementation of the Plan and the resolution of objections to Claims, if any are asserted, without further motion or application to the Bankruptcy Court.

6.07.   <u>Post-Effective Date Service List</u>. Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "<u>Service List</u>"): (a) any Person directly affected by the relief sought in the pleading, (b) the U.S. Trustee, (c) parties that have filed a Notice of Appearance in the Chapter 11 Case, and (d) the Reorganized Debtor.

6.08.   <u>Section 505 Powers</u>. The Debtor, the Estate, and the Reorganized Debtor reserves all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

7.01.   <u>Distributions</u>.  All Distributions to be made under this Plan shall be made by the Reorganized Debtors in the manner provided in this Plan and the Confirmation Order.

7.02.   <u>Distribution Dates</u>

(a)   <u>Post-Effective Date Distribution Date</u>. The Post-Effective Date Distribution Date shall occur, (a) with respect to each Claim or Interest that is an Allowed Claim or an Allowed Interest as of the Effective Date, as soon as reasonably practicable after the Effective Date; and (b) with respect to each Claim that is not an Allowed Claim or an Allowed Interest as of the Effective Date, as soon as reasonably practicable after the date on which such Claim or Interest is Allowed.

(b)   <u>Post-Closing Date Distribution Date</u>. The Post-Closing Date Distribution Date shall occur, (a) with respect to each Claim or Interest that is an Allowed Claim or an Allowed Interest as of the Closing Date, as soon as reasonably practicable after the Closing Date; and (b) with respect to each Claim that is not an Allowed Claim or an Allowed Interest as of the Closing Date, as soon as reasonably practicable after the date on which such Claim or Interest is Allowed.

7.03.   <u>Timing and Amount of Distributions</u>. No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court. No Distribution shall be made on account of any Contested Claim until such Claim is Allowed. Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of its good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible pursuant to the terms of this Plan. The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.

7.04.   <u>Means of Cash Payment</u>. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

7.05.   <u>Record Date for Distributions</u>. As of the close of business on the Effective Date (the "<u>Distribution Record Date</u>"), the register for Claims will be closed, and there shall be no further changes in the holders of record of any Claims. Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of a Claim occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Reorganized Debtor may, in the exercise of its good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

7.06.   <u>Delivery of Distributions</u>. All Distributions, deliveries, and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in the Chapter 11 Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of its sole discretion. After such date, all Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

7.07.   <u>W-9 Forms</u>. Each holder of an Allowed Claim must provide a W-9 form or other such necessary information to comply with any withholding requirements of any Governmental Unit (collectively the "<u>W-9 Form</u>") to the Reorganized Debtor prior to receiving any Distribution from the Reorganized Debtor. In the event a holder of an Allowed Claim does not provide a W-9 Form to the Reorganized Debtor within thirty (30) days of the Effective Date, the Reorganized Debtor shall, at an appropriate time, issue a written request to each holder of an Allowed Claim that has not previously provided a W-9 Form to the Reorganized Debtor. The request shall be in writing and shall be delivered to the last address known to the Debtor, as appropriate. The request shall conspicuously advise and disclose that failure to provide a W-9 Form to the Reorganized Debtor within thirty (30) days shall result in a waiver of any right or rights to a Distribution. In the event any holder of an Allowed Claim fails to provide the Reorganized Debtor with a W-9 Form within thirty (30) days after the date of written request described herein, then the holder of such Allowed Claim shall be deemed to have waived the right to receive any Distribution.

7.08.   <u>Time Bar to Cash Payments</u>. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof.

Requests for reissuance of any check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued. Any request for reissuance in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

7.09.   Cure Period. Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default. Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes. Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

7.10.   Distributions after Substantial Consummation. All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8007.

## ARTICLE VIII.
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

8.01.   Retention of Estate Claims. Debtor and Reorganized Debtor hereby specifically reserve, retain, and preserve the Estate Claims including those reflected in the attached **Exhibit 1** hereto. Reference is here made to **Exhibit 1** hereto, which constitutes an integral part of this Plan. The provisions of this Article of the Plan, as well as the descriptions and disclosures relating to the Estate Claims in the Disclosure Statement, are provided in the interest of providing maximum disclosure of the Estate Claims of which the Debtor is presently aware and shall not act as a limitation on the potential Estate Claims that may exist. All Estate Claims are reserved, retained, and preserved both as causes of action for an affirmative recovery and as counterclaims and for the purposes of offset or recoupment against any Claims asserted against the Estate.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and for the purposes of offset, recoupment or defense against any Claim asserted against the Debtor, the Assets, the Estate, or the Reorganized Debtor.

8.02.   <u>Retention of Estate Defenses</u>. Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in the Reorganized Debtor. For this purpose, all Estate Defenses are hereby reserved, retained, and preserved by the Debtor and the Estate, including without limitation all such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code, as of the Effective Date based on the entry of the Confirmation Order.

8.03.   <u>Assertion of Estate Defenses</u>. The Reorganized Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Defenses for the benefit of the creditors of the Estate of the Reorganized Debtor.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

9.01.   <u>Claims Listed in Schedules as Disputed</u>. Any General Unsecured Claim which is listed in the Schedules as unliquidated, contingent, or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.

9.02.   <u>Responsibility for Objecting to Claims and Settlement of Claims</u>. The Reorganized Debtor shall have exclusive standing and authority to either object to any Claim or settle and compromise any Objection to any Claim, including as follows:

(a)      From and after the Effective Date, the Reorganized Debtor have the sole and exclusive right to file, settle, or litigate to Final Order any Objections to any Claims; and

(b)      From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

9.03.   <u>Objection Deadline</u>. All Objections to Claims shall be served and filed by the Objection Deadline; *provided, however*, that the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim. The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline with respect to any Claim. Any such motion may be granted without notice or a hearing. In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such

motion. Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor. Nothing contained herein shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

9.04.    <u>Response to Claim Objection</u>. If the Reorganized Debtor filed an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim. Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing. The negative notice language in the Objection shall satisfy the notice requirement in section 3007(a) of the Bankruptcy Rules, and the Reorganized Debtor shall not be required to send a separate notice of the Objection to the Creditor whose Claim is subject to the Objection.

9.05.    <u>Distributions on Account of Contested Claims</u>. If a Claim is Contested, then the dates for any Distributions as to such Contested Claim shall be determined based upon the date such Claim, or a portion thereof, is Allowed, and thereafter Distribution shall be made on account of such Allowed Claim pursuant to the provisions of the Plan. No Distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

9.06.    <u>No Waiver of Right to Object</u>. Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release, or impair the Reorganized Debtor's right to object to any Claim.

9.07.    <u>Offsets and Defenses</u>. The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim. Assertion of counterclaims by the Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceedings.

9.08.    <u>Claims Paid or Reduced Prior to Effective Date</u>. Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Debtor or the Reorganized Debtor from paying Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE X.
## EXECUTORY CONTRACTS

10.01.  Assumption and Rejection of Executory Contracts. This Plan shall constitute a motion to assume Executory Contracts listed on **Exhibit 2** hereto on the Effective Date, except as otherwise expressly set forth in this Plan.  Any Executory Contract not listed on **Exhibit 2** hereto shall be deemed rejected as of the Effective Date unless such Executory Contract was previously rejected by operation of law or pursuant to an Order of the Bankruptcy Court in which case such Executory Contract shall be deemed rejected effective as of the date specified in any prior order or as provided by law. **Exhibit 2** may be supplemented or modified through a document filed as a Plan Documents.

10.02.  Cure Payments. Other than Painted Tree Kingwood, LLC ("Painted Tree") and CareATC, both Tenants of the Debtor, the Debtor, or the Reorganized Debtor, asserts that it does not owe any Cure Claims for any other Executory Contract assumed in the Plan. The proposed Cure Claim of Painted Tree is treated as a Class 7 Claim as provided in this Plan.  The proposed Cure Claim of CareATC is treated as a Class 6 Claim as provided in this Plan.  With respect to any other counterparty to an Executory Contract assumed by the Reorganized Debtor who disagrees with the proposed Cure Claims, or proposed treatment thereof, as set for on Exhibit 2 must assert such what it believes should be its Cure Claim by a written demand for payment thereof filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date and serve on the Reorganized Debtor as provided herein.  Any dispute as to the existence or amount of any such Cure Claim shall be determined by the Bankruptcy Court as a contested matter pursuant to Bankruptcy Rule 9014 as a "core" matter.  In the event a Final Order of the Bankruptcy Court provides that a Cure Claim exists with respect to an Executory Contract to be assumed, unless the treatment of such holder's Cure Claim is otherwise provided for under the Plan, the payment of such Cure Claim will be made pursuant to terms as agreed to between the Reorganized Debtor and the holder of such Cure Claim.  Notwithstanding the foregoing, the Reorganized Debtor will comply with all as may be required by section 365(b)(1) with respect to the assumption of Executory Contracts.

10.03.  Bar to Rejection Claims. Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Reorganized Debtor's assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel by the earlier of thirty (30) days after the Effective Date, or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

10.04.  Rejection Claims. Any Rejection Claim not barred by section 10.03 of the Plan, and not arising as a result of the rejection of an unexpired real property lease, and to the extent Allowed, shall be treated as a Class 6 General Unsecured Claim subject to the provisions of section 502(g) of the Bankruptcy Code. Any Rejection Claim by a lessor of real property based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, to

the extent Allowed, shall be treated as a General Unsecured Claim and limited and subject to sections 502(b)(6), and 502(g) of the Bankruptcy Code and state law mitigation requirements. All Rejection Claims shall be deemed as Contested Claims until Allowed. Nothing contained herein shall be deemed an admission by the Debtor or the Reorganized Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

10.05.  Reservation of Rights. Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or that the Debtor or the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

11.01.  Conditions to Effectiveness of the Plan. The Plan shall not become effective until the following conditions shall have been satisfied through the occurrence, waiver, or performance thereof, any of which conditions may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in both form and substance acceptable to the Debtor; (b) the necessary Plan Documents have been filed or executed.

11.02.  Notice of the Effective Date. On or as soon as reasonably practical after the occurrence of the Effective Date, the Reorganized Debtor shall cause a notice of the Effective Date to be filed with the Bankruptcy Court and served on all Creditors and parties-in-interest.

11.03.  Revocation of Plan. The Debtor may revoke and withdraw the Plan at any time before the Effective Date. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then this Plan shall be deemed null and void and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or any other Person, or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

## ARTICLE XII.
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

12.01.  Compromise and Settlement

(a)      Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtor or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or

unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor or the Estate. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtor, the Estate, Creditors, and other parties-in-interest, and are fair, equitable and within the range of reasonableness. The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtor, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Debtor and its affiliates, successors, assigns, the Reorganized Debtor, the Reorganized Debtor's Assets, the Estate, or the Business Assets, any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

(b)     It is not the intent of this Plan that confirmation of the Plan shall in any manner alter or amend any settlement and compromise (including those contained in agreed orders) between the Debtor and any Person that has been previously approved by the Bankruptcy Court (each, a "Prior Settlement"). To the extent of any conflict between the terms of the Plan and the terms of any Prior Settlement, the terms of the Prior Settlement shall control, and such Prior Settlement shall be enforceable according to its terms.

12.02.  Discharge.  The terms, covenants, and consideration under the Plan shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor, and the Assets arising before the Effective Date.  Except as otherwise expressly provided herein, upon the Effective Date, the Debtor and the Reorganized Debtor, and their successors in interests and assigns, shall be deemed discharged and released pursuant to section 1141(d)(1)(A) from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i), whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under section 501; (b) a Claim based upon such debt is Allowed under section 502; (c) the holder of a Claim based upon such debt has accepted the Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c).  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and the Reorganized Debtor, and their successors in interest and assigns, other than those obligations specifically set forth pursuant to the Plan.

**12.03.  Plan Injunction.  This section is referred to as the "Plan Injunction". Except as otherwise expressly provided herein, as of the Effective Date, all holders of Claims against, or Interest in, the Debtor, the Estate, or any of the Assets, that arose prior to the Effective Date are hereby permanently enjoined and prohibited from the following: (a) the commencing or continuation in any manner, directly or indirectly, of any action, case, lawsuit or other proceeding of any type or nature against the Debtor,**

**Reorganized Debtor, Assets, or the Estate, with respect to any such Claim or Interest arising or accruing before the Effective Date, including without limitation the entry or enforcement of any judgment, or any other act for the collection, either directly or indirectly, any Claim or Interest against the Estate, the Debtor, the Reorganized Debtor, or the Assets; (b) the creation, perfection, or enforcement of any Lien, right, or burden, either directly or indirectly, against the Assets, the Debtor, or the Reorganized Debtor with respect to any such Claim or Interest arising or accruing before the Effective Date, or (c) taking any action in relation to the Debtor, the Estate, the Reorganized Debtor, or the Assets, either directly or indirectly, which violates or does not conform or comply with the provisions of this Plan or Confirmation Order applicable to such Claim or Interest. The Plan Injunction shall also be incorporated into the Confirmation Order.**

12.04.  <u>Setoffs</u>. Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims, and Estate Defenses of any nature that the Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims, and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims, and Estate Defenses that the Estate may possess against such Claimant. In no event shall any Claimant or Interest holder be entitled to setoff any Claim or Interest against any Claim, Estate Claim, or right of the Debtor without the consent of the Debtor or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

12.05.  <u>Recoupment</u>. Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, Estate Claim, or account receivable of the Debtor or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtor or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment; and (c) the Debtor or the Reorganized Debtor has provided a written response to such Claim or Interest holder, stating unequivocally that the Debtor or the Reorganized Debtor consents to the requested recoupment. The Debtor and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment. In the absence of a written response from the Debtor or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

12.06.  Turnover. On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable nonbankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

12.07.  Automatic Stay. The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor, the Estate, and all Assets.

## ARTICLE XIII.
## JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN

13.01.  Retention of Jurisdiction. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)  To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)  To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections and disputes thereto;

(c)  To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)  To hear and determine any and all adversary proceedings, applications, or contested matters, including relating to the allowance of any Claim;

(e)  To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset or recoupment; and (iv) determinations of Objections to Contested Claims;

(f)  To liquidate and administer any disputed, contingent, or unliquidated Claims, including the Allowance of all Contested Claims;

(g)     To administer Distributions to holders of Allowed Claims and Allowed Interests as provided herein;

(h)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)     To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(j)     To enforce the discharge granted to the Debtor pursuant to section 1141 and the Plan Injunction against any Person;

(k)     To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(l)     To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan;

(m)    To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(n)     To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(o)     To enter a final decree closing the Chapter 11 Case; and

(p)     To determine any other matter or dispute relating to the Estate, the Estate Claims, the Estate Defenses, the Assets, or the Distributions by the Reorganized Debtor.

13.02.  <u>Abstention and Other Courts</u>. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Case, this Article of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

13.03.  <u>Non-Material Modifications</u>. The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Reorganized Debtor may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of

the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

13.04.  <u>Material Modifications</u>. Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. This Plan may be modified at any time after confirmation and before its Substantial Consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification. A holder of a Claim or Interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

14.01.  <u>Severability</u>. Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the re-solicitation of any acceptance or rejection of the Plan.

14.02.  <u>Oral Agreements; Modification of Plan; Oral Representations or Inducements</u>. The terms of the Plan, Disclosure Statement and Confirmation Order may only be amended in writing and may not be changed, contradicted, or varied by any oral statement, agreement, warranty, or representation. Neither the Debtor, any representative of the Estate, nor their attorneys have made any representation, warranty, promise, or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan, the Disclosure Statement, or the Confirmation Order or other order of the Bankruptcy Court.

14.03.  <u>Waiver</u>. The Reorganized Debtor shall not be deemed to have waived any right, power, or privilege pursuant to the Plan unless the waiver is in writing and signed by the Reorganized Debtor. There shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section. The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power, or privilege.

14.04.  <u>Notice</u>. Any notice or communication required or permitted by the Plan shall be given, made, or sent as follows:

(a)  If to a Creditor, notice may be given as follows: (i) if the Creditor has not filed a proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)     If to the Reorganized Debtor, notice shall be sent to the following address:

> Jeff P. Prostok
> Emily S. Chou
> Dylan T.F. Ross
> **FORSHEY PROSTOK LLP**
> 777 Main Street, Suite 1550
> Fort Worth, Texas 76102
> Telephone: (817) 877-8855
> Facsimile: (817) 877-4151
> jprostok@fosheyprostok.com
> echou@forsheyprostok.com
> dross@forsheyprostok.com

(c)     Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d)     Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

14.05.  <u>Compliance with All Applicable Laws</u>. If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; *provided, however*, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Reorganized Debtor.

14.06.  <u>Duties to Creditors; Exculpation</u>. The Debtor shall not ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Chapter 11 Case, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date. The Debtor shall be fully exculpated and released from any and all claims and causes of action by any Person, known or unknown, in connection with, or arising out of, or relating to, any of the following: (x) the Chapter 11 Case, including all matters or actions in connection with or relating to the administration of the Estate, (y) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (z) any act or omission relating to the administration of

the Plan from the Petition Date to the Effective Date, except for claims and causes of action arising out of the Debtor's actual fraud, gross negligence, or willful misconduct.

14.07.  <u>Votes Solicited in Good Faith</u>.  Upon entry of the Confirmation Order, the Debtor and the Estate Professionals will be deemed to have acted in good faith within the meaning of sections 1125(e) and 1129(a)(3) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125, and are entitled to the protections afforded by section 1125(e).

14.08.  <u>Binding Effect</u>. The Plan shall be binding upon, and shall inure to the benefit of, the Reorganized Debtor, the holders of the Claims or Liens, and their respective successors-in-interest and assigns.

14.09.  <u>Governing Law, Interpretation</u>. Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law. The Plan shall control any inconsistent term or provision of any other Plan Documents.

14.10.  <u>Payment of U.S. Trustee Fees and Reporting</u>. All accrued U.S. Trustee Fees shall be paid by the Reorganized Debtor as soon as practicable after the Effective Date. The Reorganized Debtor shall continue to pay all U.S. Trustee Fees as they accrue and become due and payable until a final decree is entered and the Chapter 11 Case is closed. After the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court and serve on the U.S. Trustee a quarterly financial report for each quarter, or portion thereof, that the Chapter 11 Case remains open.

14.11.  <u>Filing of Additional Documents</u>. On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

14.12.  <u>Computation of Time</u>. Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan. If the final day for any Distribution, performance, act or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act or event shall be extended to the next Business Day. Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

14.13.  <u>Elections by the Reorganized Debtor.</u> Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor, or Person.

14.14.  <u>Release of Liens</u>. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to and vested in the

Reorganized Debtor shall be deemed to be released, terminated, and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

14.15.  <u>Rates</u>. The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

14.16.  <u>Compliance with Tax Requirements</u>. In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

14.17.  <u>Notice of Entry of Confirmation Order</u>. Promptly after entry of the Confirmation Order, the Reorganized Debtor, as directed by the Bankruptcy Court in the Confirmation Order, shall serve on all known parties-in-interest and holders of Claims and Interests, notice of entry of the Confirmation Order.

*[Remainder of page intentionally left blank]*

Dated:   May 21, 2023                    Respectfully submitted,

                                         CHESTNUT RIDGE ASSOCIATES LLC


                                         By: */s/ Andrew Schreer*
                                              Andrew Schreer
                                              Manager and Managing Member




Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
Dylan T.F. Ross
State Bar No. 24104435
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151
jprostok@fosheyprostok.com
echou@forsheyprostok.com
dross@forsheyprostok.com

**ATTORNEYS FOR THE**
**DEBTOR AND DEBTOR-IN-POSSESSION**



L:\JPROSTOK\CHESTNUT RIDGE ASSOCIATES, LLC #6374\DS & PLAN\AMENDED DS & PLAN\AMENDED PLAN 2023 (5.21 ESC).DOCX

# EXHIBIT 1

# ESTATE CLAIMS &
# ESTATE DEFENSES

Exhibit 1 – AMENDED CHAPTER 11 PLAN OF REORGANIZATION

p. 1

## PRESERVATION OF ESTATE CLAIMS, ESTATE DEFENSES

All claims and causes of action held by Debtor against any Person, both for purposes of an affirmative recovery or as a counterclaim, or offset as defense against any Claim against the Estate, the Debtor, or Reorganized Debtor, whether based on contract, tort or the common law, or any law, statute, or regulation of any governed body or entity as well as all legal and equitable rights and remedies relating to the same, including any right or Claim for equitable subordination or veil piercing.

All claims and causes of action assertable by Debtor arising under chapter 5 of the Bankruptcy Code, including without limitation, actions brought or which may be brought under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code.

All claims and causes of action, against pre-petition professionals relating in any way to professional services provided to Debtor pre-petition.

Claims and causes of action arising under any contract or lease to which Debtor was/is a party.

All rights, claims, and/or defenses, including setoff and recoupment, of the Debtor, as landlord/lessor, under the Tenant Leases.

All claims and causes of action for fraud, fraudulent misrepresentation, fraudulent inducement, conspiracy, breach of fiduciary duty, or tortious interference with contract held by the Debtor.

Claims and causes of action against individuals or entities responsible for Chestnut Ridge Associates LLC's bankruptcy and causing damages to Chestnut Ridge Associates LLC.

Claims and causes of action of the Debtor against the Prepetition Releasee(s), as such term is defined in the *Final Order Authorizing the Debtor's Use of Cash Collateral; ad granting Adequate Protection and Related Relief* [Docket. No. 79], that a court of competent jurisdiction determines pursuant to a final, non-appealable order, results primarily from the actual fraud, gross negligence, or willful misconduct of such Prepetition Releasee(s).

Unless any causes of action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtor and the Estate expressly reserve all causes of action for later adjudication by Reorganized Debtor and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such causes of action upon or after the confirmation or consummation of the Plan. Without limiting the foregoing, parties are advised that the Debtor specifically preserves for the Reorganized Debtor any avoidance actions under chapter 5 of the Bankruptcy Code it may hold against all parties disclosed in the Debtor's Schedules or Statement of Financial Affairs, as hereafter amended or supplemented, as having received any conveyances or transfers from the Debtor.

Exhibit 1 – AMENDED CHAPTER 11 PLAN OF REORGANIZATION

p. 2

# EXHIBIT 2

# EXECUTORY CONTRACTS
# TO BE ASSUMED

Exhibit 2 – AMENDED CHAPTER 11 PLAN OF REORGANIZATION

p. 1

| Name of Counterparty | Description of Lease/Contract | Proposed Cure Claim |
|---|---|---|
| Aldi | Tenant Lease for Unit 1387 at The Shoppes at Kingsgate<br><br>1387 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Binh's Tailor | Tenant Lease for Unit 1117 at The Shoppes at Kingsgate<br><br>1117 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| CareATC | Tenant Lease for Unit 1331 at The Shoppes at Kingsgate<br><br>1331 Kingwood Dr. Kingwood, TX 77339 | $21,500.00<br><br>The Debtor proposes to treat the Cure Claim of CareATC as a Class 6 Claim as provided in the Plan. |
| Cell Doc | Tenant Lease for Unit 1113 at The Shoppes at Kingsgate<br><br>1113 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Cilantro's | Tenant Lease for Unit 1377 at The Shoppes at Kingsgate<br><br>1377 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Dollar Tree | Tenant Lease for Unit 1385 at The Shoppes at Kingsgate<br><br>1385 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Donald's Donuts | Tenant Lease for Unit 1381 at The Shoppes at Kingsgate<br><br>1381 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 – AMENDED CHAPTER 11 PLAN OF REORGANIZATION

p. 2

| Essential Skin Care | Tenant Lease for Unit 1259 at The Shoppes at Kingsgate<br><br>1259 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
|---|---|---|
| Fit in 42 | Tenant Lease for Unit 1267 at The Shoppes at Kingsgate<br><br>1267 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Fur Babies | Tenant Lease for Unit 1303 at The Shoppes at Kingsgate<br><br>1303 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Hearing Aid Express, Inc | Tenant Lease for Unit 1247 at The Shoppes at Kingsgate<br><br>1247 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Jason's Deli | Tenant Lease for Unit 1275 at The Shoppes at Kingsgate<br><br>1275 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Liberty Tax | Tenant Lease for Unit 1309 at The Shoppes at Kingsgate<br><br>1309 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Mencius Gourmet Hunan | Tenant Lease for Unit 1379 at The Shoppes at Kingsgate<br><br>1379 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Mr. Gattis Pizza | Tenant Lease for Unit 1345 at The Shoppes at Kingsgate<br><br>1345 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 – AMENDED CHAPTER 11 PLAN OF REORGANIZATION

p. 3

| | | |
|---|---|---|
| On the Park | Tenant Lease for Unit 1271 at The Shoppes at Kingsgate<br><br>1271 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Painted Tree Kingwood, LLC | Tenant Lease for Unit 1153 at The Shoppes at Kingsgate<br><br>1153 Kingwood Dr. Kingwood, TX 77339 | $ 1,010,881.60 (as of June 30, 2023)<br><br>The Debtor proposes to treat the Cure Claim of Painted Tree as a Class 7 Claim as provided in the Plan. |
| Schlotzsky's | Tenant Lease for Unit 1263 at The Shoppes at Kingsgate<br><br>1263 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| SPI, LLC | Property Management Agreement for Management of The Shoppes and Kingsgate<br><br>PO Box 130564 Spring TX, 77478 | $0.00 |
| State Farm Agent | Tenant Lease for Unit 1329 at The Shoppes at Kingsgate<br><br>1329 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Summer Energy | Service Agreement<br><br>PO Box 660938 Dallas, TX 75266 | $0.00 |
| The Mint National Bank | Tenant Lease for Unit 1213 at The Shoppes at Kingsgate<br><br>1213 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| The Mint National Bank | Tenant Lease for Unit 1215 at The Shoppes at Kingsgate<br><br>1215 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 – AMENDED CHAPTER 11 PLAN OF REORGANIZATION

p. 4

| | | |
|---|---|---|
| The Mint National Bank | Tenant Lease for Unit 1223 at The Shoppes at Kingsgate<br><br>1223 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| The Mint National Bank | Tenant Lease for Unit 1231 at The Shoppes at Kingsgate<br><br>1231 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| The Mint National Bank | Tenant Lease for Unit 1235 at The Shoppes at Kingsgate<br><br>1235 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Thrive Nutrition | Tenant Lease for Unit 1327 at The Shoppes at Kingsgate<br><br>1327 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Tiger-Rock Martial Arts | Tenant Lease for Unit 1313 at The Shoppes at Kingsgate<br><br>1313 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Tina Nails | Tenant Lease for Unit 1245 at The Shoppes at Kingsgate<br><br>1245 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Trademark Kitchens & Baths | Tenant Lease for Unit 1133 at The Shoppes at Kingsgate<br><br>1133 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Tuesday Morning | Tenant Lease for Unit 1375 at The Shoppes at Kingsgate<br><br>1375 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 – AMENDED CHAPTER 11 PLAN OF REORGANIZATION

p. 5

| Waste Management | Service Agreement<br>9590 Clay Road Houston, TX 77080 | $0.00 |
|---|---|---|
| Wells Fargo Bank | Tenant Lease for Unit 1319 at The Shoppes at Kingsgate<br><br>1319 Kingwood Dr. Kingwood, TX 77339 | $0.00 |
| Wells Fargo Bank - ATM | ATM Lease at The Shoppes at Kingsgate<br><br>1319 Kingwood Dr. Kingwood, TX 77339 | $0.00 |

Exhibit 2 – Amended Chapter 11 Plan of Reorganization

p. 6